**MIXING EQUIPMENT CO., Inc.**

v.

**PHILADELPHIA GEAR, INC. and**
**George Leamy.**

**Civ. A. No. 70–320.**

United States District Court,
E. D. Pennsylvania.

March 10, 1970.

Bancroft D. Haviland, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff.

Edwin B. Barnett, of Strong, Barnett & Grasberger, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION AND ORDER

BODY, District Judge.

Plaintiff, a designer, manufacturer and seller of industrial mixing equipment, brings this action against one of its former employees for breach of certain covenants ancillary to employment by plaintiff, and against a competitor corporation for the inducement of that breach. A conspiracy on the part of the defendants to commit the aforementioned breach is also alleged. The plaintiff seeks equitable as well as monetary relief.

Jurisdiction is based upon diversity of citizenship and the requisite amount in controversy.

## FINDINGS OF FACT

1. Plaintiff is a New York corporation whose principal place of business is located in Rochester, New York.

2. Defendant Philadelphia Gear is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal office and place of business located at King of Prussia, Pennsylvania.

3. Defendant George Leamy is a resident of the Commonwealth of Pennsylvania, with a place of business at Philadelphia Gear.

4. Diversity of citizenship for purposes of federal jurisdiction exists among the parties.

5. The amount in controversy exceeds ten thousand dollars ($10,000.00), exclusive of interest and costs.

6. (a) Since 1923 plaintiff has been engaged in the business of designing, manufacturing and selling industrial mixing equipment throughout the United States and in foreign countries throughout the world. It is the largest manufacturer of such equipment in the United States. As a result of research, engineering, designing, manufacturing and sales, plaintiff has succeeded in establishing throughout the United States and abroad a valuable and extensive trade, trade name and good will for plaintiff and its products among its customers, and has engineered, developed and marketed numerous mixing devices throughout said area which have developed for it and its trade name a reputation among customers and the public at large for excellence in design, engineering and manufacturing.

(b) Defendant Philadelphia Gear is engaged in several lines of production, but one of its major lines is also industrial mixers, in which field it is in direct competition with plaintiff and, indeed, is one of plaintiff's two major competitors.

7. (a) Much of plaintiff's business involves the design and manufacture of specialized mixing equipment and the selection of mixing equipment to meet the specific needs of specific customers. Engineering, design and manufacturing processes for much of this equipment were developed by plaintiff, and much of the information, plans, specifications, drawings and models, tables, charts and other material relating thereto have been developed at great expense to plaintiff and are confidential and secret, and known by plaintiff's employees and former employees, including George Leamy, to be confidential and secret.

(b) Plaintiff employs a staff of graduate engineers, to whom it has given prolonged specialized training in the "art" of mixing technology and know-how, and whom it employs to solve complex mixing problems of its customers and to deal with its customers and their technical mixing problems. These engineers are called "application engineers".

(c) Plaintiff has developed four technical reference books and voluminous files for the use of its application engineers, which contain confidential information concerning plaintiff's experience in application and designing of mixing techniques, formulas, equipment, procedure and charts, which it has developed through its experience in solving its customers' mixing problems, as well as confidential design, pricing and customer information. Access to these documents is restricted to plaintiff's employees or agents who have need of using the material, and much of it is available only to the application engineers and the officers of the plaintiff corporation. Plaintiff takes stringent precaution to insure the confidentiality of this data.

8. In order to prevent its competitors from utilizing plaintiff's confidential information, know-how, experience and the training of its application engineers, plaintiff has, since 1960, required each person hired by it as an application engineer, as a condition of his or her

agreement of employment, to execute a covenant essentially providing in part:

(a) I also agree that I will never disclose or authorize anyone else to disclose, without first getting written permission from the Company, any confidential information about the Company, its plans, its products, or its operations;

(b) I hereby agree that during my employment, and for one year after, I will not disclose or authorize anyone else to disclose, without first getting written permission from the Company, any information concerning the Company's plans, business or products except as is necessary in the ordinary course of the Company's business, even though such or similar information may have been made public before;

(c) I hereby further agree that, during my employment by the Company, and for one year thereafter, I shall not, either as principal, agent, consultant, employee, partner, or any other capacity, engage in any work or other activity in the field or fields in which I have worked or shall work for the Company, and I shall not engage in any work or other activity in any way connected with the development, manufacture or sale of any product which competes with any product of the Company made or sold either during the term of my employment or within one year thereafter.

9. In early March 1965, defendant George Leamy, who had no prior experience in the industrial mixing field, was employed by plaintiff as an application engineer. He executed an employment application, agreeing that if employed he would execute as a part of his employment agreement the restrictive covenants referred to above. Thereafter, on March 15, 1965, defendant George Leamy commenced his training with plaintiff for application engineering, the formal portion of which lasted for six months. On March 18, 1965, he executed the aforesaid covenants. The execution of this agreement was in consideration of and ancillary to Leamy's employment by plaintiff.

10. During the course of, and in connection with, his employment with plaintiff, defendant George Leamy had access to and utilized confidential files, plans, specifications, designs, blueprints, processes, tables, models, charts, technical reference books, customer and pricing information and lists, and other materials developed by plaintiff, as well as plaintiff's production and marketing techniques, and defendant George Leamy was aware of the confidential and secret nature of such material.

11. During his employment with plaintiff, defendant Leamy served as an application engineer and, in addition, was in charge of the application engineering laboratory of plaintiff. The training he received, the confidential information entrusted to him, and the nature of his employment were such that restraint of his revelation of confidential information and prohibition of his employment by a competitor for a one year period after he left plaintiff served a reasonable business purpose of plaintiff.

12. On July 4, 1969, defendant George Leamy voluntarily terminated his employment with plaintiff, and on July 7, 1969, he became employed by defendant Philadelphia Gear as an application engineer in mixing, and later as technical director of Philadelphia Gear's mixing division.

13. Plaintiff fulfilled all the terms of its agreement of employment with defendant George Leamy.

14. Prior to leaving plaintiff's employ, defendant Leamy falsely and deceptively advised plaintiff that he was being employed by Philadelphia Gear in its limitorque division, which was not competitive with plaintiff, assured plaintiff that he would not compete for the one year period, and knowingly misled plaintiff as to the true nature of his new employment.

15. Defendant Philadelphia Gear employed defendant George Leamy as an

application engineer because of his experience with plaintiff and with knowledge of his prior employment by plaintiff and of facts putting it on notice of his aforesaid agreement with plaintiff.

16. Commencing on July 7, 1969, and continuing until the present, defendant George Leamy has violated his agreement with plaintiff in that he has:

(a) worked for Philadelphia Gear in the fields of engineering, design, solution of customer problems, and sales representation, all in connection with equipment directly competitive with plaintiff;

(b) approached customers of plaintiff on behalf of defendant Philadelphia Gear in connection with sales presentation of design work for mixers and mixer installations, which customers he knew to be customers of plaintiff;

(c) disclosed confidential information of plaintiff concerning its plans, products, operation, engineering, design, manufacture and sales of mixing equipment to defendant Philadelphia Gear without permission of plaintiff;

(d) copied or utilized plaintiff's confidential designs, plans, processes, specifications, other confidential information and papers acquired from plaintiff on behalf of defendant Philadelphia Gear.

17. Philadelphia Gear induced defendant George Leamy to violate his agreement with plaintiff in the foregoing respects, and has conspired with him to secure for its own profit confidential information which was the property of plaintiff.

18. Plaintiff has no adequate remedy at law to protect itself from defendants' violation of its rights and of the aforesaid covenant, and plaintiff is being subjected to irreparable harm, past, present and future, by said conduct.

19. The foregoing acts of Philadelphia Gear constitute improper and unlawful competition.

## DISCUSSION

This Court is obligated to follow the choice of law rules of the forum state, Pennsylvania. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). While we are cited to no case enunciating the Pennsylvania choice of law rule concerning the validity of a contract, we are convinced that it would refer to the substantive law of the state having the most significant contacts with that issue. Certified Laboratories of Texas, Inc. v. Rubinson, 303 F.Supp. 1014, 1022 n. 2 (E.D.Pa.1969); Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964); Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954). In the instant case that state is New York, where the contract services were to be performed. Restatement (Second) of Conflict of Laws § 196 (1968 Proposed Official Draft).

Accordingly we turn to a consideration of the validity of the covenants in question under New York law. The law of that state is as follows:

"Thus, a covenant by which an employee simply agrees, as a condition of his employment, not to compete with his employer after they have severed relations is not only subject to the overriding limitation of 'reasonableness' but is enforced only to the extent necessary to prevent the employee's use or disclosure of his former employer's trade secrets, processes or formulae * * * or his solicitation of, or disclosure of any information concerning, the other's customers. * * * If, however, the employee's services are deemed 'special, unique or extraordinary', then, the covenant may be enforced by injunctive relief, if 'reasonable,' even though the employment did not involve the possession of trade secrets or confidential customer lists." (Citations omitted) Purchasing Associates, Inc. v. Weitz, 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 604, 196 N.E. 2d 245, 248 (1963).

The identity of the major users of industrial mixers is known throughout the industry, and these customers are actively solicited by the major competitors. In addition, it is evident that at the time Leamy left the plaintiff's employ, there were approximately seven application engineers with salaries higher than his. Moreover, it is uncontradicted that Leamy was replaced shortly after his departure. These facts render unnecessary any further inquiry concerning confidential customer lists or "special, unique or extraordinary" services.

During his employment with plaintiff, however, defendant Leamy learned much about the industrial mixing business and his employer's approach to it. It is primarily to prevent his use or disclosure of that information that plaintiff seeks enforcement of Leamy's restrictive covenants.

A trade secret is defined as follows:

"[it] may consist of any formula, patterns, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. * * * It differs from other secret information in a business in that it is not simply information as to single or ephemeral events in the conduct of the business * * *. A trade secret is a process or device for continuous use in the operation of the business. * * *. It is not requisite that only the proprietor of the business know it. He may, without losing his protection, communicate it to employees involved in its use. He may likewise communicate it to others pledged to secrecy. Others may also know of it independently, as, for example, when they have discovered the process or formula by independent invention and are keeping it secret. Nevertheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information." Minnesota Min. & Mfg. Co. v. Technical Corp., 23 Misc. 2d 671, 678–679, 192 N.Y.S.2d 102, 112–113 (1959); Restatement of Torts, § 757, comment (b).

■■ There is of course a distinction to be drawn between the skills acquired by an employee in his work and the trade secrets, if any, of his employer. Assuming the existence of a restrictive covenant, the former may be used by the employee in subsequent employment while the latter may not. Against this background it seems clear that trade secret status should be accorded the fruits of research carried out by the plaintiff, compiled by plaintiff in the form of charts, graphs, tables and the like for its day-to-day use, and carefully guarded by plaintiff as confidential information. Confidential data concerning plaintiff's operating and pricing policies, which Leamy also used in the course of his employment, similarly comes within the definition of a trade secret.[1]

■ Although plaintiff was unable to show specific instances in which Leamy has used or disclosed these trade secrets while working for Philadelphia Gear, it has, nevertheless, succeeded in convincing the Court of the likelihood that such either has or will happen during the term of the covenants. For, "the mere rendition of the service along the lines of his training would almost necessarily impart such knowledge to some degree." Eastman Kodak Co. v. Powers Film Products, Inc., 189 App.Div. 556, 561, 179 N.Y.S. 325 (1919).

■ Concluding our discussion on the issue of enforceability, we need only remark that the covenants in question

---

1. Much information of these types is contained in the four reference books (the Sales Data Book, the Waste and Water Data Book, the Application Engineer Reference Book and the Technical Reference Book) developed by plaintiff and copies of which were given to Leamy for his own use while in plaintiff's employ.

meet the added requirement of reasonableness.[2]

Philadelphia Gear's liability, if any, is grounded in tort and stems from its conduct relating to Leamy's breach of his covenants with plaintiff. A choice of law rule different from that governing the validity of the covenants is here involved. Because of its substantial contacts with the issue of inducement,[3] we refer to the substantive law of Pennsylvania to determine whether liability exists. Griffith v. United Air Lines, Inc., supra.

A corporation will be held to have induced the breach of a restrictive covenant when its conduct is integrally related to the breach. Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 207 A.2d 768 (1965); Annot., 24 A.L.R.3d 821, 839 (1969). A showing of intent on the part of the defendant to cripple or destroy the plaintiff is unnecessary to a finding of inducement. Jacobson & Co., Inc. v. International Environment Corp., 427 Pa. 439, 235 A.2d 612 (1967); Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957). Philadelphia Gear's conduct in interviewing Leamy for employment, despite the fact it knew he was then working for plaintiff and either knew or should have known of his restrictive covenants, clearly constitutes inducement of Leamy's breach. National Chemsearch Corp. of New York v. Bogatin, 233 F. Supp. 802, 810 (E.D.Pa.1964), vacated on other grounds, 349 F.2d 363 (3d Cir. 1965).

We come finally to the question of relief. At this stage of the proceeding, the plaintiff seeks an injunction enjoining defendant Leamy from further breach of his restrictive covenants. It also asserts that for such a decree to have any practical effect, Leamy must be further enjoined from continuing in the employ of Philadelphia Gear.[4] Plaintiff reasons that if Leamy were permitted to work in another division of Philadelphia Gear, it would be extremely difficult for this Court to supervise and enforce a decree enjoining further breaches of his restrictive covenants. Based upon the past conduct of both Leamy and Philadelphia Gear, the Court agrees. Therefore if injunctive relief against Leamy is awarded, it will contain such a provision.

As additional relief plaintiff seeks the return of all confidential papers belonging to it which are presently in the possession of Leamy or some other representative of Philadelphia Gear. Since the evidence presented does not indicate that any of plaintiff's documents or files are currently held by either Leamy or Philadelphia Gear as a result of the former's action, no such provision will be included in any decree we might issue.

Finally, plaintiff prays for an injunction restraining Philadelphia Gear from continuing defendant Leamy in its employ and from otherwise inducing a further breach of his restrictive covenants.[5]

The law of the forum governs the appropriateness of particular remedies with regard to both Leamy and Philadelphia Gear. Baltimore & O. R.R. Co. v. Halchak, 71 F.Supp. 224 (W.D. Pa.1947); Brooke v. New York L.E. & W. R.R. Co., 108 Pa. 529, 530, 1 A. 206 (1885). In Pennsylvania, injunction is

---

2. Concerning the reasonableness of the geographical area affected by the covenants, see DeLong Corporation v. Lucas, 176 F. Supp. 104, 121–122 (S.D.N.Y.1959), aff'd. 278 F.2d 804 (2d Cir. 1960), cert. den. 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed.2d 58.

3. It was in Pennsylvania that the majority of discussions between Leamy and Philadelphia Gear relating to employment took place. Leamy's initial offer of employment was also made by a representative of Philadelphia Gear in Pennsylvania.

4. Plaintiff has requested that the injunction, in so far as it relates to the continued employment of Leamy by Philadelphia Gear, run for a period of one year from the time of its issuance. We reject this request as amounting to a plea that the court rewrite the covenant.

5. Id.

the traditional remedy by which to redress the breach of restrictive covenants and the inducement of such breaches. Morgan's Home Equipment Corp. v. Martucci, supra; Stuart v. Gimbel Bros., Inc., 285 Pa. 102, 131 A. 728 (1926). The defendants assert, however, that a balancing of the equities indicates that injunctive relief should be denied. This Court views the equities as favoring the plaintiff and therefore elects to award preliminary injunctive relief.

Accordingly, we enter the following:

## ORDER

And now, this tenth day of March, 1970, it is hereby ordered that the defendants, George Leamy and Philadelphia Gear, Inc., their agents, servants, employees, and all persons in active participation with them, be preliminarily enjoined pending final hearing and determination of this proceeding, as follows:

1) Defendant George Leamy is preliminarily enjoined during the pendency of this action from:
   a) directly or indirectly continuing in the employ of defendant Philadelphia Gear, Inc.;
   b) directly or indirectly accepting employment from any other person or concern in any work, activity or capacity involving mixing equipment, including, but not limited to, the designing, engineering, production or sale of mixing equipment;
   c) directly or indirectly conspiring or agreeing with defendant Philadelphia Gear, Inc. to breach the contract here involved between plaintiff and defendant George Leamy.

2) Defendant George Leamy is preliminarily enjoined during the pendency of this action from:
   a) directly or indirectly utilizing in any way any trade secrets, confidential or proprietary information of plaintiff;

   b) competing unlawfully with plaintiff.

3) Defendant Philadelphia Gear, Inc. is preliminarily enjoined during the pendency of this action from:
   a) directly or indirectly continuing defendant George Leamy in its employ;
   b) directly or indirectly inducing defendant George Leamy, or conspiring or agreeing with defendant George Leamy, to engage in any activities in breach of the contract here involved between defendant George Leamy and plaintiff.

4) Defendant Philadelphia Gear, Inc. is preliminarily enjoined during the pendency of this action from:
   a) directly or indirectly securing from defendant George Leamy or utilizing in any way any trade secrets, confidential or proprietary information of plaintiff obtained from defendant George Leamy;
   b) from competing unlawfully with plaintiff.