### RESIDENT ADVISORY BOARD et al.

v.

### Frank L. RIZZO et al.

### Civ. A. No. 71–1575.

United States District Court,
E. D. Pennsylvania.

March 4, 1977.

---

---

---

enforce the judgment and suspend the Court's injunction during the pendency of the appeal. These motions are presently before this Court.

■■■ The Court's Order was based upon findings of fact in connection with the following three separate legal theories:

(1) that governmental defendants have an obligation under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.,* ("the Fair Housing Act") to act affirmatively to promote integration in all federally assisted housing programs. The Court found that PHA, the City, RDA and HUD had failed to fulfill their obligations to promote integration in connection with Whitman Park, and thus violated the Fair Housing Act;

(2) that the Fair Housing Act prohibits governmental action which has a racially discriminatory effect unless the government is able to prove a compelling governmental interest which justified its action. The Court found that the actions of PHA, the City and RDA in terminating the construction of the townhouses had a racially discriminatory effect, and thus shifted the burden to the defendants to show a compelling governmental interest justifying their actions. The Court further found that PHA, the City and RDA failed to carry their burden to prove a compelling governmental interest which justified their action in terminating the construction of the townhouses. The Court found that this was an additional violation of the Fair Housing Act by PHA, the City and RDA;

(3) that actions taken with a racially discriminatory purpose or intent in connection with housing not only violate the constitution, but also violate the Civil Rights Statutes (42 U.S.C. §§ 1981, 1982, 2000d *et seq.,* 3601 *et seq.*). The Court found that the City, in halting the construction of the

townhouses and canceling the contract for their construction, acted with a racially discriminatory purpose and intent. The Court found this to be a third and separate legal basis upon which the City had violated its statutory and constitutional obligations in this matter.

Fed.R.Civ.P. 62(c) provides that:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

It appears well settled by the case law that the party seeking the stay must show (1) that he will likely prevail on the merits of the appeal,[1] (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay. *Long v. Robinson,* 432 F.2d 977, 979 (4 Cir. 1970). A request for a stay is addressed to the discretion of the court; and as with any exercise of discretion, the court must balance the equities presented by the particular set of facts. *Evans v. Buchanan,* 424 F.Supp. 875 (D.Del.1976).

1. *Likelihood of Success on Appeal.*

(a) *Affirmative Duty.*

In attempting to demonstrate a likelihood of success on appeal, PHA and the City contend that the Fair Housing Act does not impose upon them an obligation to act affirmatively to promote integration in federally funded housing programs. They argue that this obligation applies only to HUD. These defendants have not called our attention to any legal precedent which limits this affirmative obligation to HUD. In our

---

1. There is disagreement among the circuits as to the degree of likelihood of success which must be shown. Some courts require a "strong showing" of success on the merits, *Reserve Mining Co. v. United States,* 498 F.2d 1073 (8th Cir. 1974), others require a "great likelihood, approaching near certainty", *Greene v. Fair,*

314 F.2d 200, 202 (5th Cir. 1963). We do not herein make any determination as to the degree of certainty which must be shown, since we find that defendants have not satisfied even the least rigorous of the standards, i. e., mere likelihood of success on appeal.

Memorandum of November 5, 1976, we discussed the following cases, all of which hold that the obligation to act affirmatively to promote racial integration is not limited to HUD, but is equally applicable to other governmental agencies participating in federally assisted housing programs. *Otero v. New York City Housing Authority,* 484 F.2d 1122, 1133 (2d Cir. 1973) (New York City Housing Authority is under an obligation to act affirmatively to achieve integration in housing); *Blackshear Res. Org. v. Housing Authority of City of Austin,* 347 F.Supp. 1138, 1148 (W.D.Tex.1972) (Housing Authority of City of Austin is charged with the affirmative obligation to further the national housing policy expressed in the 1964 and 1968 Civil Rights Acts); and *Banks v. Perk,* 341 F.Supp. 1175, 1182 (N.D. Ohio 1972), *aff'd in part, rev'd in part on other grounds,* 473 F.2d 910 (6th Cir. 1973) (Cuyahoga [Cleveland] Metropolitan Housing Authority has an affirmative duty to integrate its housing projects).

### (b) *Racial Effect.*

In connection with their contention that there is a likelihood of success on appeal, PHA and the City also argue that the Court "misinterpreted the meaning of *Washington v. Davis,* [426] U.S. [229], 96 S.Ct. 2040, [48 L.Ed.2d 597] (1976), in determining that proof of a racially discriminatory effect is sufficient to show a violation of Title VIII of the Civil Rights Act [the Fair Housing Act]." This contention is clearly a "misinterpretation" of our interpretation of *Washington.* In *Washington,* the Supreme Court held that a racially discriminatory effect was not sufficient to establish a con-

stitutional violation, but that plaintiffs must prove discriminatory purpose or intent on the part of the defendants. The Court made a distinction, however, in connection with liability in Title VII cases wherein proof of a racially discriminatory effect shifts the burden to the defendants to show a compelling interest as justification for its action. We held that the prima facie case concept applicable to cases brought pursuant to Title VII should be applied to violations of the Fair Housing Act. As heretofore pointed out, this Court found that the actions of PHA, the City and RDA in terminating the construction of the townhouses had a racially discriminatory effect which shifted the burden to the defendants to prove a compelling governmental interest which justified their actions. The Court further found that defendants had failed to meet their burden,[2] and thus their actions in terminating the construction of the townhouses were in violation of the Fair Housing Act.[3]

### (c) *Racial Intent.*

In its attempt to demonstrate a likelihood of success on appeal, the City contends that footnote 21 in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* —— U.S. ——, ——, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), which makes reference to *Mt. Healthy City School District Bd. of Education v. Doyle,* —— U.S. ——, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), should be interpreted as meaning that this Court should have made a finding as to whether the City would have terminated construction had it not been racially motivated. As we have already pointed out, the Court found that

2. Only the City advanced any justification for its actions. It contended that its actions in terminating the project were required because of threatened violence. In our Memorandum of November 5, 1976, we pointed out that the Supreme Court has consistently held that threats of violence or unrest by some citizens cannot justify depriving others of their constitutional rights, *Palmer v. Thompson,* 403 U.S. 217, 226, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971); *Cooper v. Aaron,* 358 U.S. 1, 16, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). This Court found that on the basis of the testimony of Inspector Fencl, the head of the Civil Disobedience Unit of the

Police Department of the City of Philadelphia, the Philadelphia Police Department could control any disturbance which might have erupted.

3. *Cf. Village of Arlington Heights v. Metropolitan Housing Development Corp.,* —— U.S. ——, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) wherein the Court, in reversing the Circuit's determination that a racially discriminatory effect was sufficient to prove a constitutional violation, remanded the case for determination as to whether there had been a violation of the Fair Housing Act.

the City failed to establish any legally acceptable justification for its actions.[4]

### 2. *Irreparable Injury to PHA and the City.*

The City and PHA contend that irreparable financial harm will be suffered by the City, PHA and the taxpayers in the event the Court of Appeals reverses the Orders of this Court after construction contracts have been awarded and the townhouses are completed. As the record in this case discloses, neither the City nor PHA were obligated to provide the construction money necessary for the building of the townhouses. The cost of construction has been appropriated by Congress and the money is presently in HUD's hands. In a letter dated February 4, 1977 from HUD to the Department of Justice, HUD expressed its position in this matter as follows:

\*     \*     \*     \*     \*     \*

The relief ordered by the District Court will not unduly burden this Department. Essentially, it requires only HUD's continued financial support of the Whitman Park public housing project. Since we regard the project as a desirable one, and have at all times stood ready to provide the necessary financial assistance for its construction, we find no reason to appeal from a decision holding that the project should be constructed.

. . . The Department does not support the actions of the local defendants in opposition to the project, nor does it wish to associate itself with those defendants in an appeal. We believe that any such action by HUD would be seen as an abandonment of this Department's support for the project and the policies of fair housing which we are responsible for furthering.

\*     \*     \*     \*     \*     \*

Thus, neither the City nor PHA will be required to make large expenditures of money for the construction of these townhouses. It does appear, however, that PHA, HUD, the City and RDA will be required to devote considerable time and effort to reviewing the existing plans and determining the changes, if any, which must be made, and the steps which must be taken to complete construction. We find it difficult to accept the proposition that the building of 120 townhouses in a city wherein all parties agree there is an urgent need for additional decent housing will result in irreparable injury.

### 3. *Injury to Plaintiffs from a Stay.*

PHA and the City contend that the plaintiffs will suffer no injury from a stay. Such an argument completely ignores the Court's finding that there is an urgent need for additional decent housing for low-income families in the City of Philadelphia. Further delay in the construction of these 120 townhouses will undoubtedly injure the plaintiffs, even though everyone recognizes that the construction of 120 houses does not come close to satisfying the needs of approximately 14,000 families who are on the waiting list for housing.

### 4. *Public Interest.*

PHA and the City argue that "the court should be extremely reluctant to order the expenditure of public funds while a decision on appeal might render such expenses pure waste." As we have heretofore pointed out, this Court does not agree that the building of 120 townhouses on a vacant site in a city which is in dire need of decent housing for low-income families is "pure waste".

Having carefully considered all of the contentions of the City and PHA, we decline, for the reasons heretofore set forth, to stay the Judgment Order entered November 5, 1976. The Court is well aware that the judgment in this case has engendered a diversified public reaction and we sincerely hope that counsel for all parties will join together and seek an expedited hearing of this appeal.

---

**4.** *See* note 2, *supra.*