EASTERN MILK PRODUCERS COOPERATIVE ASSOCIATION, INC., Plaintiff,

v.

LEHIGH VALLEY COOPERATIVE FARMERS, INC., ALLENTOWN, PENNSYLVANIA and Bernard Hinish, Curryville, Pennsylvania, Defendants.

Civ. A. No. 78–91.

United States District Court, E. D. Pennsylvania.

Feb. 16, 1978.

472

Peter Wells, Syracuse, N.Y., Henry B. Fitzpatrick, Jr., Philadelphia, Pa., for plaintiff.

Joseph N. Ewing, Jr., C. Howard Thomas, Jr., and Thomas J. Elliott, of Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendants.

## · MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the court on defendants' motion to suspend a preliminary injunction pending appeal.

Eastern, the plaintiff, and Lehigh, the corporate defendant, are competing milk cooperatives. Following two days of testimony, I granted plaintiff's motion for a preliminary injunction the effect of which was to prohibit Lehigh's accepting milk from 16 named dairy farmers (producers), who were contractually obligated to ship to Eastern. An immediate appeal from this order was taken and Lehigh's present motion seeks to suspend the injunction until the Court of Appeals has ruled.

Lehigh's motion is brought pursuant to Fed.R.Civ.P. 62(c). Case law requires that a party seeking such a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by this stay, and (4) that the public interest will be served by granting the stay. Such a request is addressed to the discretion of the court, and, as with any exercise of discretion, the court must balance the equities presented by the particular set of facts. *Resident Advisory Board v. Rizzo*, 429 F.Supp. 222, 224 (E.D.Pa.1977).

In support if its motion, Lehigh contends, as it did at the time of the hearing, that Eastern neither showed there were breaches of contract nor, if there were breaches, that they were induced by Lehigh.

At the conclusion of the hearing on January 31, 1978, I made oral findings of fact and stated my conclusions of law.[1] My findings were based on the evidence before me which included the contracts between Eastern and the 16 producers referred to in my order. These contracts were valid on their face. It was not contested that Bernard Hinish, the individual·defendant and a field representative of Lehigh, had talked to each of the producers, had told them of

1. These findings and conclusions have been transcribed by the court reporter.

the benefits of membership in Lehigh, and that shortly thereafter, each of these producers had ceased shipping to Eastern and had begun to ship to Lehigh. Based on this evidence and the lack of evidence to show the contracts had been terminated, I concluded that these producers had breached their contracts. Lehigh again argues that there may have been any number of reasons why these 16 producers stopped shipping to Eastern, and of course, that is true. The possibilities are without number and Eastern made no effort to exclude all of them or even the most obvious of them. On the other hand, Lehigh produced no evidence in support of its contention that Eastern had been at fault and that the producers may have been justified in refusing to ship milk to it. The names of these producers were no surprise to Lehigh—it had had notice of Eastern's contentions and the names as of December 5, 1977. No evidence was produced by way of deposition, affidavit, or anything else to justify the refusal of these 16 producers to abide by their contracts. Although Lehigh argues that circumstantial evidence cannot be accepted to establish a breach of contract or the inducing of a breach, no legal or logical reason is presented in support of that contention.

■ In stunning contrast to its failure at the time of the hearing to produce evidence from these milk producers, Lehigh has now submitted their ex parte affidavits. Whatever they may say, I am unwilling to accept the underlying assumption that they present me with an acceptable form of legal evidence to do anything. Lehigh does not contend that it gave any notice these affidavits would be sought, and the time frames are such that for all practical purposes Eastern has had no opportunity to seek counter affidavits, explanations, or make any response. In fact, the present motion, which was filed on February 14, although served on local counsel promptly, has not even been seen by Eastern's trial counsel whose office is in New York. I conclude, therefore, that I may not consider the affidavits which Lehigh has filed.

■ Pennsylvania law, admittedly applicable in this matter, recognizes the sanctity of milk marketing agreements and makes anyone who knowingly induces the breach of such a contract with a dairy cooperative liable in damages. 15 Purdons Statutes, Section 12125. Hinish, Lehigh's representative who enrolled the milk producers in question with Lehigh, did so knowing they were then members of Eastern. Under some circumstances, one who interferes with the contractual arrangements of another may be privileged to do so. No such privilege was suggested in this case.

From the evidence presented at the hearing, I concluded that Lehigh's conduct constituted inducing breach of contract under prevailing authority. The question is one of tort law. I found particular guidance in the words of Dean Prosser. In his section on "Interference With Contractual Relations," Prosser states that despite its name, "inducing breach of contract . . . does not require inducement to action as a means . . . ." W. Prosser, Law of Torts, Ch. 25, § 129, p. 935 (4th Ed. 1971). He concedes that a difficult case is posed where defendant simply pursues his own ends with the knowledge that his conduct will most likely prevent performance of another's contract, but without any actual desire or primary intent to achieve this result. In such a case, Prosser concludes that the defendant's conduct must be deemed intentional, and thus actionable, unless it can be justified. *Id.* at 941–42.

On the question of justification, Prosser explains that where defendant seeks to protect an existing economic interest, such as a final stake in the affairs of the person induced "he is privileged to prevent performance of the contract of another which threatens it." On the other hand,

> where his interest is merely one of prospective advantage, not yet realized, he has no such privilege. The typical case is that of business competition. The courts have held that the sanctity of the existing contract relation takes precedence over any interest in unrestricted competi-

tion, and have enforced as law the ethical precept that one competitor must keep his hands off of the contracts of another. This . . . has found particular application in cases of offers of better terms to induce the breach of a contract, and of the violation of exclusive agency agreements . . .

*Id.* at 944–45.

Clearly, Lehigh's conduct fits the mold of what Prosser would call unprivileged and unjustified. Lehigh had no preexisting interest in the affairs of milk producers who were under contract to Eastern.[2] On the contrary, Lehigh's interest was purely prospective, and it sought to advance that interest by actively soliciting Eastern's members to become members of Lehigh. By doing so, Lehigh knew or should have known that it would prevent the performance of Eastern's exclusive contracts.

This reasoning is supported by case law. In *Mixing Equipment Co. v. Philadelphia Gear, Inc.,* 312 F.Supp. 1269 (E.D.Pa.1970), mod. and aff'd. 436 F.2d 1308 (3d Cir. 1971), the court was concerned with conduct which was said to have induced the breach of covenants in an employment contract. Applying the law of Pennsylvania which governs in the instant case as well, the court concluded:

[a] corporation will be held to have induced the breach of a restrictive covenant when its conduct is integrally related to the breach . . . a showing of intent on the part of the defendant to cripple or destroy the plaintiff is unnecessary to a finding of inducement . . . Philadelphia Gear's conduct in interviewing Leamy for employment, despite the fact it knew he was then working for plaintiff and either knew or should have known of his restrictive covenants, clearly constitutes inducement of Leamy's breach.

312 F.Supp. at 1275 (citations omitted).

Plainly, Lehigh's conduct is "integrally related" to the producers' breach. An inducement may be inferred from the fact that there was an approach by Lehigh to one whom it knew was under contract with Eastern, followed by the formation of a new contract with Lehigh and a breach of the Eastern commitment.

Also, instructive is *National Chemsearch Corp. of New York, Inc. v. Bogatin,* 233 F.Supp. 802 (E.D.Pa.1964), vacated on other grounds, 349 F.2d 363 (3d Cir. 1965). There, Judge Higginbotham (now Circuit Judge Higginbotham) concluded that in the context of a highly competitive business situation, one should look to the totality of the circumstances to determine whether the defendant has participated in the breach. Where he has so participated, a finding of inducement is proper. All of the above authority leads me to conclude that my foremost concern in this case must be with the sanctity of Eastern's contracts. To protect that sanctity I must reaffirm my conclusion that Lehigh is guilty of inducing the breach of the contracts in question.

This conclusion makes it clear that Lehigh is not entitled to a stay of the injunction pending appeal. As noted above, the party seeking such a stay must show a likelihood of success on the merits of his appeal. *Resident Advisory Board v. Rizzo,* 429 F.Supp. 222 (E.D.Pa.1977). Rather than satisfying that standard here, I conclude that Lehigh's appeal is unlikely to be successful. Indeed, in order to prevail the defendant must show that I was in error in concluding on the basis of the evidence before me that it had induced the breach of these contracts. With all due humility, I think my findings were correct.

Lehigh also contends that it will be irreparably injured if the stay is not granted. In essence, Lehigh argues that it is small and Eastern is large, it is weak and Eastern is powerful, Eastern has surplus milk and Lehigh has surplus processing facilities, and therefore, the restrictions imposed by my order on its ability to obtain new members causes irreparable harm. Nevertheless, being an underdog does not give one license to

---

2. See Conclusion of Law No. 4. "During November, 1977, defendant, Lehigh, had no existing economic interest which gave Lehigh any privilege to interfere with the contracts between plaintiff and plaintiff's members."

induce the breach of a valid contract. Unfortunately, even if irreparable injury is certain to occur, the stay must be denied absent a showing that defendant is likely to succeed on appeal. *Blankenship v. Boyle,* 145 U.S.App.D.C. 111, 447 F.2d 1280 (1971).

Lehigh also contends that Eastern will suffer no harm if the injunction is stayed because Eastern has a surfeit of milk. While a stay of the injunction may not cause immediate economic harm to Eastern, the whole point of this suit is the threat that Eastern perceives to the sanctity of its membership contracts.[3] These agreements are terminable every six months. If indiscriminate membership raiding is permitted, there can be no certainty in the production and marketing of milk. Thus, to stay the injunction now would defeat its purpose and benefit as far as Eastern is concerned.

For the foregoing reasons, I conclude that the defendants' motion for a stay of the injunction previously granted by this court must be denied.

---

3. My seventeenth finding of fact lists the adverse effects on Eastern that would flow from the wrongful termination of its membership contracts: reduction of strength, threat to its contracts, disrupted marketing and hauling arrangements, loss of dues, loss of milk to sell, and a threat to its membership locals.