UNITED STATES of America

v.

Joseph WRIGHT, et al.*

Crim. No. 80–296.

United States District Court,
E. D. Pennsylvania.

June 18, 1981.

---

* U.S. v.: Lafferty (John) (80–293); Brown (Francis) (80–292); Josaphovitch (David) (80–295); Lafferty (William) (80–294); Gilbert (Kryan) (80–261); Devine (Michael) (80–262); Egger (Patricia) (80–263); McKeown (Ann) (80–264); Sullivan (Margaret) (80–269); Hollywood (Rose) (80–274); Hasson (Lorraine) (80–325); Marchesano (Carol) (80–326).

Walter S. Batty, Jr., Daniel B. Huyett, Stephen V. Wehner, Lynell N. Staton, Asst. U. S. Attys., Philadelphia, Pa., for Government-appellees.

Anna Durbin, Edward Weiss, Donald G. Joel, Philadelphia, Pa., for defendants-appellants.

Before LOUIS H. POLLAK and SHAPIRO, District Judges.

This opinion deals with thirteen appeals from judgments of conviction for criminal contempt, 18 U.S.C. § 401.[1]

---

1. The appeals of Joseph Wright (80–296), John Lafferty (80–293), Francis Brown (80–292), David Josaphovitch (80–295), and William Lafferty (80–294) are from judgments entered by

We sat together to hear arguments on certain issues of law which are common to most of the appeals: In post-argument consultation, we have reached agreement on those issues of law and our views are reflected in this opinion.

We have not, however, joined forces for the consideration and disposition of appellants' respective challenges to the sufficiency of the evidence adduced by the Government against each of them: Each of us will address those issues in separate opinions to follow.

### I.

Appellants were charged with criminal contempts, pursuant to 18 U.S.C. § 401, arising from their alleged violation, on June 3, 1980, of Judge Broderick's Order of April 1, 1980, prohibiting certain activity in the vicinity of the Whitman Park Townhouse project in South Philadelphia.[2] *Resident Advisory Board [RAB] v. Rizzo*, 425 F.Supp. 987, 1029 (E.D.Pa.1976) (Order), *aff'd as modified*, 564 F.2d 126 (3d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978).

Having executed a waiver of the right to trial by a district judge, each of the appellants was tried by a federal magistrate. The Government moved in advance of trial to have any sentences imposed limited to a maximum of six months' incarceration and/or a $500 fine. Appellants all demanded jury trials which were denied. The trials were thereupon conducted to the bench.

On appeal to this court, appellants do not argue that they had a constitutional entitlement to a jury trial. *Muniz v. Hoffman*, 422 U.S. 454, 476–77, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975); *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *In re Scott*, 605 F.2d 736, 738 (4th Cir. 1979). But they do assert certain statutory entitlements to a jury trial. Appellants also challenge the jurisdiction of magistrates to conduct trials of contempts, with or without a jury. Further, certain of the appellants contend that, even assuming the magistrates who tried them had jurisdiction, those magistrates should have recused themselves for the reason that they had already tried other persons charged with breach of Judge Broderick's April 1, 1980 Order. Finally, all of the appellants argue that the evidence presented was insufficient to support the verdicts. With certain exceptions relating to the sufficiency of the evidence, these issues are resolved against the appellants. However, we are constrained to reverse all the convictions for the reason that the waivers of district court trial executed by appellants were not in the form expressly mandated by Congress.

### *Statutory Rights to Jury Trials*

Appellants rely on 18 U.S.C. §§ 402 and 3691 in support of their argument that these cases should have been tried to a jury.[3] These statutes provide that, when the behavior charged as contumacious also violates a provision of the federal criminal code or state criminal law, the defendant is entitled to a jury trial unless the alleged contempt constitutes

... disobedience of any lawful ... order ... entered in any suit or action brought

---

Magistrate Edwin Naythons; and their appeals are to Judge Pollak. The appeals of Kryan S. Gilbert (80–261), Michael Devine (80–262), Patricia Egger (80–263), Ann McKeown (80–264), Margaret Sullivan (80–269), and Rose Hollywood (80–274) are from judgments entered by Magistrate Tullio Gene Leomporra; and their appeals are to Judge Shapiro. The appeals of Lorraine Hasson (80–325) and Carol Marchesano (80–326) are from judgments entered by Magistrate Edwin Naythons; and their appeals are also to Judge Shapiro. All appeals are pursuant to 18 U.S.C. § 3402.

**2.** This project to build integrated low-cost housing has attracted much public attention. Judge Broderick has reviewed "the long history" of the litigation in *Resident Advisory Board v. Rizzo*, No. 71–1575 (E.D.Pa. December 19, 1980). The procedural history is summarized at p. 1117 of this Opinion.

**3.** Section 402 defines breach of a court order as "contempt" where such breach is also a federal or state crime; section 402 also provides that trial of such an alleged contempt take place in the manner prescribed by section 3691, which appellants look to as guaranteeing them entitlement to a jury trial.

or prosecuted in the name of, or on behalf of, the United States.

Before us, then, is the question whether the action giving rise to Judge Broderick's April 1, 1980 Order is described by this exception to the general statutory entitlement to a jury.

It is appellants' position that, on its face, the statute dispenses with a jury only where the United States is a plaintiff, for only then is the suit brought "on behalf of" the United States; here, since the United States (through the Department of Housing and Urban Development) was a defendant, appellants argue that the statutory dispensation did not come into play and hence that juries were required below.

 Of course, the dispensing language of the statute does not, *in haec verba*, require that the United States (or a federal agency) be a party "plaintiff." But "suit or action brought or prosecuted in the name of, or on behalf of, the United States" would seem at a minimum to contemplate that, whatever formal label attaches to the litigating status of the United States, the United States should at some point in the litigation assume a procedural posture functionally equivalent to that of a complaining party. And this common sense parsing of the statute is consistent with what we understand to be the legislative purpose animating the statutory language: That legislative purpose—as it emerges from the legislative history—was to permit non-jury trials where the concern of the United States in seeking, through contempt proceedings, to redress "disobedience of any lawful . . . order," was enforcement of the judicially

determined public interest as distinguished from enforcement of judicially determined private entitlements.

The statutes at issue derive from Section 21 of the Clayton Act. *See* Revisor's Note to § 3691. The creation of the statutory right to a jury trial in criminal contempt cases was a response to Congress' belief—in the second decade of this century—that district judges were, at the behest of powerful private litigants, allowing the formidable federal judicial contempt power to be the instrument of private law enforcement to the detriment of weaker parties, most especially labor unions. Congress appears to have concluded that a jury, empanelled to try a contempt, would act as a buffer between a weaker defendant and,

> say, a corporation, rich and powerful, [which moves to obtain] a blanket injunction at midnight, broad as the canopy of heaven in its terms, and then oppressing the poor, humble laborer.

48 Cong.Rec. 8779 (1912).[4]

Accordingly, the Clayton Act provided for a right to a jury in the trial of contempts also constituting federal or state crimes in the trial of which a right to a jury would have obtained.[5] However, the protective, but more cumbersome, jury trial procedure was dispensed with where the underlying action was on behalf of the United States; under such circumstances, Congress felt, the United States should be enabled to proceed expeditiously "to enforce its judgments," especially when putting into effect decrees of dissolution in antitrust cases. 48 Cong.Rec. 8778, 8779. The presence of the United States as a party litigant[6] was seen

**4.** *See* Frankfurter and Landis, *Power of Congress Over Procedure in Criminal Contempt in "Inferior" Federal Courts—A Study in Separation of Powers*, 37 Harv.L.Rev. 1010, 1056 and n.168 (1924). Much of the relevant statutory history is found at 48 Cong.Rec. 8776–8787 (62d Cong.2d sess.) (1912), and 51 Cong.Rec. 9668–9674, 14413–14415 (63d Cong.2d sess.) (1914). *See also* S.Rep.No. 698, 63d Cong.2d sess. (1914) at 41–42. The constitutional challenge that a statute curtailing the authority of judges to try contempts in bench trials impermissibly infringed on the judiciary's contempt power was rejected in *Michaelson v. United*

*States*, 266 U.S. 42, 66–71, 45 S.Ct. 18, 20–21, 69 L.Ed. 162 (1924), a ruling anticipated and urged in the Frankfurter-Landis article cited above.

**5.** Appellants' behavior on June 3, 1980 was arguably prohibited by 18 Pa.C.S.A. § 5507(a) (offense of blocking the highway committed after warning by law enforcement officer).

**6.** The Government's status was frequently referred to in debate as that of a "party," not necessarily that of a formal plaintiff. *See, e. g.,* 48 Cong.Rec. 8780, 8783, 8785; 51 Cong.Rec. 9669, 9672, 14414; *but cf.* 48 Cong.Rec. 8786.

as (a) precluding any substantial likelihood of the abuses to which the legislation was addressed, and (b) requiring, in aid of the public interest, a more summary disposition of contempt proceedings than jury trials would generally permit. With these considerations in mind, it is appropriate to examine the role played by the United States in the litigation before Judge Broderick which culminated in the Order of April 1, 1980.

The *RAB* litigation, instituted in 1971, was brought by persons eligible for low-income public housing in Philadelphia. The dispute centered on the proposed location of low-income housing at Whitman Park in South Philadelphia—a site that had been cleared for the anticipated construction in 1959. *RAB*, 564 F.2d at 129–30. Those sued included the City of Philadelphia, Mayor Frank Rizzo,[7] and others who sought to prevent the construction of the integrated housing project in the predominantly white neighborhood, *RAB*, 510 F.Supp. 793 at 797 (E.D.Pa.1980).

The United States first appeared in this litigation when the Department of Housing and Urban Development (HUD) was joined as third-party defendant by defendant Whitman Area Improvement Council (WAIC), a local community group opposed to the construction of the Whitman project. *RAB*, 564 F.2d at 130, n.1; 425 F.Supp. at 994. HUD had, by that time, given tentative approval in 1957 for the project, approved funds for development in the same year, approved designs in 1959, and through 1975 spent over six and one-half million dollars to have the project executed. *RAB*, 425 F.Supp. at 995–96. After extensive discovery, HUD was formally joined as a defendant by plaintiffs. *Id.* at 995.

Through the nine years of the *RAB* litigation, HUD has consistently urged the construction of the site, over vigorous opposition of the other defendants; HUD has moved to obviate the potentially inhibiting effect of various state and city regulations; and as *amicus curiae* HUD joined plaintiffs in urging affirmance on appeal of Judge Broderick's Memorandum and Order at 425 F.Supp. 987; *see, RAB*, 564 F.2d 121, 129, 130, n.1, and 139–40 (3d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978); indeed, HUD joined plaintiffs in petitioning Judge Broderick for the April 1, 1980 Order itself, in a further attempt to have the project completed. The latest example of the identity of interests between the United States and plaintiffs is found in Judge Broderick's December 19, 1980 Memorandum in No. 71–1575: There, plaintiffs and HUD petitioned for a clarification of the April 1, 1980 Order, to make patent that certain types of obstreperous behavior in the project's vicinity were prohibited. Again, the United States conducted itself as a party with interests virtually indistinguishable from those of the formal plaintiffs, and diametrically opposed to those of the active defendants such as WAIC.

In short, the United States, through HUD, has played so substantial and so formal[8] a role, and one which has for so long

---

7. Mayor Rizzo was named as a defendant in succession to Mayor James H. J. Tate. *RAB*, 425 F.Supp. at 994.

8. In *United States v. Barnett*, 330 F.2d 369 (5th Cir. 1963), *certified question answered in the negative*, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), judges on both courts wrestled with the problem whether the action there was brought "on behalf of" the United States. The Court of Appeals had directed the United States to prosecute contempt citations against the Governor and Lieutenant Governor of Mississippi, who had sought to prevent James Meredith, a black student, from attending the University of Mississippi. *See, Meredith v. Fair*, 313 F.2d 534 (5th Cir. 1962). The United States in the matter underlying the *Barnett* case was *amicus curiae*, and not a formal party; in *Barnett* itself, the United States had filed an "ancillary action." Circuit Judges Tuttle, Rives, Brown and Wisdom, writing for their half of an evenly divided court, concluded that the involvement of the United States, since it was acting as more than an ordinary *amicus*, sufficed pursuant to 18 U.S.C. § 3691 to make jury trials unnecessary. 330 F.2d at 388–89. Other judges would have required the United States at least to be a party, 330 F.2d at 428 (Gewin, J.), 330 F.2d at 433 (Bell, J.), *see also* 330 F.2d at 413, 417 (Cameron and Jones, JJ., respectively). The majority of the Supreme Court did not address the issue. In dissent, Justice Goldberg, joined by Chief Justice Warren, Justice

been so closely aligned with that of the plaintiffs, that the *RAB* litigation is an action "brought ... on behalf of, the United States," within the meaning of 18 U.S.C. § 3691.[9]

We do not think that *Toner v. C.I.R.*, 629 F.2d 899 (3d Cir. 1980) calls for a different conclusion. There the court held that a successful taxpayer suit for refund in the Tax Court was not a suit in which attorney's fees could be recovered from the United States pursuant to 42 U.S.C. § 1988, for the reason that it was not, within the meaning of Senator Allen's amendment, a "civil action or proceeding, by or on behalf of the United States ... to enforce, or charging a violation of, a provision of the United States Internal Revenue Code." In *Toner*, the court's examination of the legislative history disclosed that Senator Allen had on the Senate floor precisely defined the situation covered by his amendment as one in which "the Internal Revenue Service or the U.S. Government brings a civil action against a taxpayer," and that Senator Allen's explanation was one "on which those Congressmen who approved the amendment relied," 629 F.2d at 902 (Senator Kennedy having spoken of the award of counsel fees in actions "initiated by the plaintiff, the Government," and Representative Drinan having expressly noted that the amendment "would not apply to actions instituted against the Government by the taxpayer." *Id.* at 901). Moreover, the court in *Toner* observed that "[a]wards of attorneys' fees against the United States are prohibited by 28 U.S.C. § 2412 (1976) absent specific statutory authorization. We therefore will not

imply that attorneys' fees can be assessed against the government, but must find express statutory authorization." *Id.* By contrast, the legislative history of § 21 of the Clayton Act, 18 U.S.C. § 3691's precursor, presents a context significantly different from that revealed in *Toner.* Accordingly, we do not read *Toner* to control our construction of section 3691.

Appellants have also argued that 42 U.S.C. § 2000h required a jury trial below. That statute requires a jury where the contempt arises from proceedings under Titles II through VII of the Civil Rights Act of 1964. Although the original complaint cited the 1964 Act, neither Judge Broderick's underlying decision on the merits, *RAB v. Rizzo*, 425 F.Supp. 987, *supra*, nor Judge Broderick's Memorandum accompanying the April 1, 1980 Order, relied on that Act. Judge Broderick's *RAB* decision found violations of Title VIII of the Civil Rights Act of 1968, 425 F.Supp. at 1019–21, 1024; see also *RAB, supra,* 564 F.2d at 140, 145; the April 1 Memorandum relied on the court's equitable and inherent powers to effectuate a prior judgment, citing *Hills v. Gautreaux,* 425 U.S. 284, 293–94, 96 S.Ct. 1538 (1976). Consequently, 42 U.S.C. § 2000h is inapplicable.[10]

*Subject Matter Jurisdiction*

■ Appellants argue that, inasmuch as 28 U.S.C. § 636(e) requires magistrates to certify to the district court contempts committed before magistrates,[11] magistrates cannot try contempt cases at all. But the asserted conclusion is a *non sequitur* : Mag-

Douglas, and—on this issue—by Justice Black, would have required the United States to be a party with a formal interest in the case before invoking the statutory exception to the jury trial. Relying on the legislative history referred to in note 7, *supra,* Justice Goldberg assumed that, if a party, the United States would be a plaintiff. 376 U.S. at 737, 84 S.Ct. at 1011.

9. *But see United States v. Pyle*, 518 F.Supp. 139 (E.D.Pa.1981) (Order) where Judge Bechtle held 18 U.S.C. §§ 402 and 3691 conferred a right to a jury, apparently in circumstances similar to those before us.

10. It is true that on an application to stay proceedings and suspend the injunction issued at *RAB*, 425 F.Supp. 987, Judge Broderick wrote that the injunction "was based upon findings of fact in connection with" various legal theories including 42 *U.S.C. § 2000d. RAB v. Rizzo,* 429 F.Supp. 222, 224 (E.D.Pa. 1977). But in view of the several characterizations of the case by Judge Broderick and the Court of Appeals which we have cited, we do not think this casual reference brings the case within the ambit of 42 *U.S.C. § 2000d.*

11. *See e. g. United States v. Ritte,* 558 F.2d 926 (9th Cir. 1977).

istrates, specially designated pursuant to 18 U.S.C. § 3401(a), can try all "minor offenses." With the potential sentences cut down to misdemeanor size, the contempts prosecuted here were "minor offenses." The statutory prohibition on magistrates trying contempts of their own orders appears to be a Congressional institutionalization of the general principle that, at a contempt trial, a neutral arbiter is preferred to the one whose order was allegedly disobeyed. *See generally, Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). But the disqualification which Congress has mandated should not be given a scope broader than its syntax and logic call for.[12]

After oral argument in these appeals, we asked counsel to brief a separate jurisdictional issue: whether the consents to trial by magistrate—as opposed to trials by a district judge—conformed to the governing provisions of law, especially the last sentence of 18 U.S.C. § 3401(b), as amended October 10, 1979:

> The magistrate shall not proceed to try the case unless the defendant ... files a written consent to be tried before the magistrate that specifically waives trial, judgment, and sentencing by a judge of the district court.

In the present cases, the consents recited only the appellants' willingness "to be tried and to have the charges against me disposed of before a United States Magistrate." *Cf.* Rules of Procedure for the Trial of Misdemeanors before U.S. Magistrates 2(b)(5), effective June 1, 1980. The issue is not, as the Government suggests by its reference to e. g., *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970) and *North Carolina v. Butler,* 441 U.S. 369, 371, 99 S.Ct. 1755, 1756, 60 L.Ed.2d 286 (1979), whether the proofs of waiver were constitutionally adequate;[13] the ques-

tion is simply whether the unambiguous mandate of a jurisdiction-conferring statute was complied with. It was not complied with. Accordingly, the judgments of conviction will be reversed.

Having concluded that the convictions must be reversed for lack of jurisdiction, we are under no compulsion to review the sufficiency of the evidence adduced against the several defendants. Nonetheless, we think there are good reasons to do so: (1) Double jeopardy considerations preclude retrial of one against whom the Government has not, at the first trial, presented minimally sufficient evidence, *Hudson v. Louisiana,* —— U.S. ——, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). (2) The sufficiency of the evidence as to these appellants has been fully briefed and argued. Accordingly, in separate opinions filed subsequent to this one, Judge Shapiro will review the sufficiency of the evidence in the cases appealed to her, and Judge Pollak will review the sufficiency of the evidence in the cases appealed to him.

---

**12.** Certain appellants contend that the magistrates should have recused themselves from further trials after having heard other Whitman Park cases where similar facts and legal issues were presented. 28 U.S.C. § 455(a). There is no rule of law that trying similar cases conduc-

es to a lack of impartiality. The contention is rejected as frivolous.

**13.** *Butler,* for example, simply holds that proof of a waiver of right may include circumstantial evidence: a written document is not *sine qua non.*