Terri Lee **HALDERMAN** et al., Plaintiffs,

v.

**PENNHURST STATE SCHOOL AND HOSPITAL et al., Defendants,**

**United States of America, Plaintiff-Intervenor,**

**Pennsylvania Association For Retarded Citizens et al., Plaintiffs-Intervenors.**

Civ. A. No. 74–1345.

United States District Court, E. D. Pennsylvania.

March 9, 1982.

Steven M. Coren, Philadelphia, Pa., for P.M.'s parents.

David Ferleger, Philadelphia, Pa., for P.M.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

W. M. and B. M., the parents of P. M., a minor and Pennhurst resident scheduled to be transferred from Pennhurst to a community living arrangement on March 10, 1982, seek a stay pending appeal of this Court's Order of February 26, 1982 which dismissed the parents' exceptions to the Report of the Hearing Master. The Hearing Master found that the transfer to the community would provide greater habilitative benefit to P. M. than would continued residence at Pennhurst.

In accordance with this Court's Order of April 24, 1980, a Planning and Assessment Team including but not limited to P. M., his parents, his case manager (an employee of Chester County), and Pennhurst staff prepared an Individual Habilitation Plan for P. M. which provided for his transfer from Pennhurst to the community. Upon completion of the Individual Habilitation Plan, P. M.'s parents objected to the proposed community placement of P. M. and a hearing was held on these objections before the Hearing Master (see Order of April 24, 1980) on November 24, 1981. On December 3, 1981, the Hearing Master issued his Report which concluded that the proposed community placement would be more beneficial to P. M.'s habilitation than would continued residence at Pennhurst and that the parents' objections were not a bar to P. M.'s move to the community. The parents took exception to the Hearing Master's Report. The Court held a hearing on these exceptions on February 12, 1982, and instructed the County not to transfer P. M. from Pennhurst until the Court ruled on the parents' exceptions. On February 26, 1982, the Court affirmed the findings of fact and conclusions of law of the Hearing Master's Report and dismissed the exceptions of the parents. On March 5, 1982, the parents filed an application for a stay pending appeal of this Court's Order of February 26, 1982. For the reasons hereinafter

set forth, the Court will deny the motion for a stay.

In 1977 this Court, after 32 trial days, determined that not only were the constitutional rights of the retarded residents of Pennhurst being violated, but that their rights under both state and federal statutes were also violated; 446 F.Supp. 1295 (E.D. Pa.1977). As the trial record in this case reveals, all parties to this litigation admitted that the residents of Pennhurst were not receiving minimally adequate habilitation. By "adequate habilitation" we mean such education, training and care as will enable a retarded person to cope with life as effectively as his or her capacities will permit. The average stay of a resident at Pennhurst was 21 years, and the testimony showed that a majority of them had regressed in that their level of functioning had declined when compared to the skills which they possessed at the time of admittance to Pennhurst. On many occasions since the trial all parties have been in agreement with the many experts who testified at the trial that normalization is now universally accepted as the most beneficial method of habilitating a retarded person. Normalization is the antithesis of institutionalization and is based upon the fact that the education, training and care of a retarded person can best be accomplished in a community living arrangement. As this Court found, Pennhurst as an institution is inappropriate and inadequate as a place to habilitate the retarded. At the trial the Commonwealth represented that it intended to close Pennhurst in the early 1980's.

This Court's Order of March 17, 1978, as modified in its Order of April 24, 1980, sets forth the injunctive relief to which the plaintiffs were entitled. The Court's findings of fact, conclusions as to the legal rights of the plaintiffs, and injunctive orders have twice been affirmed by the Third Circuit. *Halderman v. Pennhurst*, 612 F.2d 84 (3d Cir. 1979), *reversed and remanded*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), Nos. 78–1490, 78–1564, and 78–1602 673 F.2d 628 (3d Cir. 1982). Thus, the basic mode of relief in this case—providing retarded citizens with professionally planned and approved habilitation in the least restrictive environment—is not likely to be overturned on appeal. However, P. M.'s parents contend that, notwithstanding Circuit Court approval of the basic scheme of relief in this case (the provision of adequate habilitation to retarded citizens in the least restrictive environment), they may, as P. M.'s parents, veto an Individual Habilitation Plan that calls for a community placement with which they disagree. This Court rejected the parents' contention in its Memorandum of February 26, 1982.

Federal Rule of Civil Procedure 62(c) provides in pertinent part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

It is well settled by the case law that a party seeking the stay of a judgment order must show (1) that it will likely prevail on the merits of the appeal, (2) that it will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay. *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970); *Philadelphia Council of Neighborhood Organizations v. Adams*, 451 F.Supp. 114, 116 (E.D.Pa.1978); *Resident Advisory Board v. Rizzo*, 429 F.Supp. 222, 224 (E.D.Pa.1977). A motion requesting a stay of a judgment order is addressed to the discretion of the Court. The Third Circuit has stated that in considering the four-prong test enumerated above, the district court should be aware that

> these [four] factors structure the inquiry, however, no one aspect will necessarily determine its outcome. Rather, proper judgment entails a 'delicate balancing' of all elements.

*Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978). *See, Evans v. Buchanan*, 424 F.Supp. 875, 879 (D.Del.1976).

### 1. Likelihood of Success on Appeal

In its Memorandum of February 26, 1982, this Court carefully considered the parents' exceptions to the Hearing Master's Report and their objections to the community placement of P. M. The Court concluded that the law does not grant to parents an absolute right to veto the decisions of retardation professionals unless and until the parents can show that the recommended programs for their child will not provide adequate habilitation and/or that some statutory or constitutional right is being violated by the child's transfer to the community. Memorandum of February 26, 1982 at 16. P. M.'s parents have made no such showing. On the contrary, the Hearing Master and the Court found that the proposed community transfer would benefit P. M. Therefore, the Court finds that the parents are not likely to prevail on the merits in their appeal.

### 2. Irreparable Injury

The parents who are seeking the stay do not claim any irreparable injury to P. M. but contend that they will suffer irreparable harm in that they are being deprived of their constitutional right to prohibit P. M.'s movement to the community. Because this Court has found that the parents have no constitutional right to prohibit P. M.'s transfer to the community on the basis of the factual findings in this record, they suffer no injury at all if P. M. is moved to the community. Furthermore, as the Hearing Master found, P. M.'s transfer to the community will be of greater habilitative benefit to P. M. than will continued residence at Pennhurst.

### 3. Injury to Other Parties from the Stay

As heretofore pointed out, P. M. will benefit from transfer to the community. A stay would deprive him of this benefit and therefore be injurious to his habilitation.

### 4. Public Interest

The public interest will not be served by a stay of P. M.'s transfer to the community. The public interest can never benefit from a failure to provide minimally adequate habilitation to one of its retarded citizens.

Having carefully considered all the contentions of the parents of P. M., this Court finds that their application for a stay fails to satisfy the four-part test for granting such stay requests and consequently fails to meet the requirements of Federal Rule of Civil Procedure 62(c). The Court will therefore enter an Order denying the motion for a stay.