UNITED STATES

v.

**Bernadette GEDRAITIS.**

UNITED STATES

v.

**Helen MOORE.**

UNITED STATES

v.

**Florence JOHNSON.**

UNITED STATES

v.

**Jean McQUILKIN.**

UNITED STATES

v.

**Maria HAMILTON.**

UNITED STATES

v.

**Joan DONNELLY.**

UNITED STATES

v.

**Mary SCHEFFLER.**

UNITED STATES

v.

**Sophia PIERCE.**

**Crim. Nos. 80–251, 80–258 to 80–260 and 80–265 to 80–268.**

United States District Court,
E. D. Pennsylvania.

July 30, 1981.

Peter F. Vaira, U. S. Atty., E. D., Walter Batty, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Joseph M. Miller, Defender Ass'n, Philadelphia, Pa., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Now before me are the appeals of eight people[1] who were convicted of criminal

1. The eight appellants are: Helen Moore, Maria Hamilton, Florence Johnson, Jean McQuilkin, Bernadette Gedraitis, Joan Donnelly, Mary Scheffler, and Sophia Pierce.

2. Section 3401(a) states:

contempt pursuant to 18 U.S.C. § 401 for alleged violation of an injunction issued by Judge Raymond Broderick on April 1, 1980. This order prohibited certain activities by the Whitman Area Improvement Council (its members and those acting in concert with it) in its protest of the construction of public housing for low-income families in the Whitman Park area of Philadelphia. The proposed construction of this housing has been the subject of longstanding dispute and litigation. *See Resident Advisory Board [RAB] v. Rizzo*, 425 F.Supp. 987, 1029 (E.D.Pa.1976), *aff'd as modified*, 564 F.2d 126 (3d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978).

On June 3, 1980, fifty-four persons, including the eight appellants in this case, were arrested for allegedly obstructing access to the Whitman construction site in violation of Judge Broderick's order. The district court referred these contempt cases to the United States Magistrates of this district pursuant to 18 U.S.C. § 3401(a) for trial.[2] The government successfully moved to limit any sentence to be imposed to six months in jail or a $500.00 fine. The appellants filed a motion requesting a jury trial, which was denied. Subsequently, they pled "not guilty" and signed a consent form agreeing to be tried before a federal magistrate. However, they crossed out that portion of the consent form which stated that any right to a jury trial was waived. The eight appellants in this case were tried by Magistrate Tullio Leomporra, who found all of them guilty of criminal contempt and sentenced them to two years probation.

On appeal to this court, the appellants argue that (1) they were denied improperly their right to a jury trial; (2) Judge Broderick's injunction is unconstitutionally overbroad; (3) the government's evidence is insufficient as a matter of law; and (4) the

When specifically designated to exercise such jurisdiction by the district court or courts he serves, any United States magistrate shall have jurisdiction to try persons accused of, and sentence people convicted of, misdemeanors committed within that judicial district.

magistrate did not have subject matter jurisdiction over their cases. For the reasons discussed below, I will grant verdicts of acquittal in favor of Jean McQuilkin and Mary Scheffler and sustain the convictions of the other appellants.

## I. SUFFICIENCY OF EVIDENCE.

■ I begin my analysis of appellants' arguments with the sufficiency issue because a finding that the government has not produced sufficient evidence would preclude on double jeopardy grounds a retrial of defendant. *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 971, 67 L.Ed.2d 30 (1980) and *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). Because the government has filed a motion stating that it does not oppose the grant of a judgment of acquittal on the basis of insufficiency of evidence as to appellants Jean McQuilkin and Mary Scheffler, I will enter judgments of acquittal in their favor. However, as to the other six appellants, I find that the government's evidence is legally sufficient to sustain their convictions.

The gravamen of appellants' sufficiency argument is that the government did not prove that they had notice or knowledge of Judge Broderick's order and therefore did not prove their willful violation of it. In response, the United States contends that the record shows sufficient evidence, albeit circumstantial, of notice to the appellants to sustain their convictions. First, the government points to the fact that the order was served upon the leaders of neighborhood groups opposing the housing project and that from March 17, 1980, when the TRO was issued, members of the United States Marshal's Office had been at the Whitman site enforcing the order and discussing its provisions with members of the community. Second, the government asserts that the appellants received notice of the injunction via the local newspapers. That is, because the Whitman project was a subject of interest to people of that neighborhood, they probably followed the news account of the controversy and thus were aware of Judge Broderick's April 1, 1980 order. The United States also argues that the community's

compliance with the terms of the injunction from March 17, 1980 until June 3, 1980, the day of the arrests, demonstrates a general knowledge of the order on the part of Whitman Park residents.

In addition, the government contends that the record shows that on the day of the arrests a series of announcements concerning the injunction and the possibility of arrest for failure to comply with it were made to the crowd assembled at the construction site by Joseph Gindhart, attorney for the Whitman Area Improvement Council, by the United States Marshal, Edward Schaeffer and by a Philadelphia police officer, Nicholas Cione. It is the government's position that it produced ample circumstantial evidence of appellants' knowledge that they were in violation of the court order. Further, the United States claims that photographs taken on the morning of June 3, 1980, before and after the arrests of people congregated in an area prohibited by the injunction establish that the appellants were in the area and heard the announcements to disperse or be arrested. In addition, the government relies on a videotape taken on June 3, 1980, which shows a group of people, singing "God Bless America," lined up behind the police vans, volunteering to be arrested.

The appellants argue that none of this evidence establishes their notice or knowledge of the injunction. They point out that the government never showed that any of them subscribed to or read the newspapers covering the Whitman controversy and the Court order of April 14, 1980. Citing the testimony of Marshal Schaeffer and Officer Cione, both of whom conceded on cross-examination that they did not know which individuals actually heard their announcements, appellants contend that the evidence does not demonstrate that they received notice as a result of the warnings made to the crowd on June 3, 1980. They also challenge the worth of the photographic evidence, arguing that the photographs were taken at various times during that morning and the testimony concerning the time when photographs were taken was too im-

precise to establish that appellants were in the area when the announcements were made.

Further, appellants do not agree that the record discloses that their arrests were voluntary. In their view, the presence of a substantial number of Philadelphia police and United States Marshals coerced people into submitting to arrest. According to appellants, even if they had "volunteered" to be arrested, one could not infer from that a knowledge by those arrested that they were in wilful violation of a court order.

■ The test for evaluating a claim of insufficient evidence is whether there is substantial evidence, when viewed in the light most favorable to the government, to uphold the conviction. *United States v. Palmeri*, 630 F.2d 192, 203 (3d Cir. 1980). A criminal conviction will withstand a challenge for insufficiency if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Applying these principles to the instant case, I find that the government's evidence is legally sufficient to sustain Magistrate Leomporra's finding that each of the six remaining appellants knowingly and wilfully violated the April 1, 1980 order issued by Judge Broderick and are thus guilty of criminal contempt.

■ Because the evidence of record does not show that appellants read or subscribed to any newspapers, one cannot conclude that they received notice of the injunction through reading news accounts. However, the photographs taken at the Whitman construction site on the day of the arrests and offered against appellants at their trial by the government provide circumstantial evidence sufficient to support a finding that appellants received notice of the injunction from announcements made by Marshal Schaeffer and Officer Cione.

The record shows that appellants Helen Moore and Maria Hamilton appear in two photographs, 6–40 and 6–43 (N.T. 1.167–68), depicting a crowd assembled in a prohibited area near the construction site. These photographs were taken respectively at 10:20 a. m. and between 11:00 a. m. and 11:20 a. m. (N.T. 1.22, 1.28). Since Marshal Schaeffer made his announcement to the crowd at about 11:35 a. m. (N.T. 1.89), Magistrate Leomporra reasonably could conclude that appellants Moore and Hamilton had adequate notice that they were violating a court order and would be arrested if they did not leave the area.

Sophia Pierce, another appellant, appears in photographs 6–48, 6–51 and 6–52 (N.T. 1.163); all of which were taken shortly after 11:30 a. m. on the day of the arrest. (N.T. 1.28, 1.50) Photograph 6–48 shows Mrs. Pierce in the prohibited area in a circle of people holding hands. Photographs 6–51 and 6–52 show her in a police van after her arrest. Given this evidence Magistrate Leomporra reasonably could find that Mrs. Pierce knew she had violated the court order.

Appellant Joan Donnelly appears in two photographs, 6–44 and 6–58. (N.T. 1.161–62). The first of these pictures, which was taken between 11:00 and 11:20 a. m. (N.T. 1.28), shows Mrs. Donnelly in a crowd gathered in the prohibited area. The second photograph, which was taken after 11:30 a. m., shows her in a line of those about to be arrested. Once again, this evidence supports the magistrate's finding that the appellant knew of the injunction and wilfully violated it.

Like Mrs. Pierce, appellant Bernadette Gedraitis is depicted in photograph 6–48 (N.T. 1.164–65), which shows a crowd congregated in the area designated as off limits for protesters by the injunction. This photograph was taken shortly after 11:30 a. m. on the day of the arrests. (N.T. 1.28, 1.50) From this evidence, Magistrate Leomporra reasonably could find knowledge of the injunction and wilful violation on the part of Mrs. Gedraitis.

Finally, appellant Florence Johnson appears in five photographs, 6–26, 6–27, 6–28, 6–29 and 6–31. (N.T. 1.166). Three of these photographs show Mrs. Johnson wearing a picket sign and standing at an entrance to the construction site in front of a dump truck. Another picture shows her talking to Inspector Fencl, one of the Philadelphia police officials present to enforce Judge Broderick's order. These photographs were taken on June 3, 1980, between 10:15 and 10:30 a. m., approximately an hour before Marshal Schaeffer's announcement. (N.T. 1.22). Nonetheless, as Magistrate Leomporra points out in his Findings of Fact, Mrs. Johnson returned to the area later that morning and submitted to arrest. I believe that a rational factfinder could infer from her voluntary submission to arrest a knowledge of the order and a wilful violation of it.

This inference can also be drawn as to the conduct of the other appellants. Marshal Schaeffer testified that he told the crowd at 11:35 a. m. that they were in violation of a court order and that they had five minutes to leave the area or they would be arrested. (N.T. 1.90) Some people left the area but others stayed and when the police vans arrived lined up to be arrested, singing "God Bless America." (N.T. 1.91–93) Magistrate Leomporra interpreted such conduct as showing an intent to violate the injunction. I find his interpretation to be reasonable; therefore, I will deny the motions of appellants Hamilton, Moore, Pierce, Donnelly, Gedraitis and Johnson for verdicts of acquittal on the basis of insufficient evidence.

## II. OTHER ARGUMENTS.

The other arguments made by appellants in support of reversal of their convictions for criminal contempt have been decided by other judges in this district who also were assigned appeals resulting from the June 3, 1980 arrests of demonstrators at the Whitman construction site. After reading the joint opinion of Judges Pollak and Shapiro, *United States v. Joseph Wright*, 516 F.Supp. 1113 (E.D.Pa., 1981) and that of Judge Bechtle, *United States v. Edward C.*

*Pyle*, 518 F.Supp. 139 (E.D.Pa.1981), I see no reason to include an extensive analysis of these issues in this memorandum. Instead, I will point out those parts of the opinions which are relevant to my disposition of these issues.

The two opinions reach contrary conclusions on the question of appellants' statutory right to a jury trial and on the question of whether the federal magistrates had jurisdiction to try those arrested for defying Judge Broderick's order. Judges Pollak and Shapiro rejected appellants' claim that they were entitled to a jury trial pursuant to 18 U.S.C. §§ 402 and 3691. These statutes provide that a person charged with criminal contempt is entitled to a jury trial if the actions alleged to have transgressed a court order also violate a provision of the federal criminal code or state criminal law. However, the right to jury trial under these statutes does not apply when the contempt involves

 . . . disobedience of any lawful writ, process, order, rule, decree or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States. 18 U.S.C. § 3691.

Judges Pollak and Shapiro found that disobedience of Judge Broderick's April 1, 1980 order restricting activities near the Whitman construction site fell within this exception. I agree. Although the United States Department of Housing and Urban Development ("HUD") was named as a defendant in the underlying suit, *RAB v. Rizzo*, 425 F.Supp. 987, 1029 (E.D.Pa.1976), *aff'd as modified*, 564 F.2d 126 (3d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978), as Judges Pollak and Shapiro have pointed out, HUD in fact consistently urged and supported the building of the Whitman project and placed itself on the side of the plaintiffs. Therefore, in effect, Judge Broderick's order arose out of litigation brought "on behalf of" the United States; therefore, those charged with contempt of that order were not entitled to a jury trial under 18 U.S.C. §§ 402 and 3691. On the other hand, Judge Bechtle found that be-

cause HUD was a defendant in *RAB v. Rizzo, supra,* people charged with criminal contempt of Judge Broderick's order were entitled to a jury trial under the two statutes.

■ Appellants also argue that they were entitled to a jury trial pursuant to 42 U.S.C. § 2000h, which requires a jury trial for one charged with contempt "arising under" Titles II through VII of the Civil Rights Act of 1964. I agree with the determination of Judges Pollak and Shapiro that Section 2000h is inapplicable here because Judge Broderick's decision in *RAB v. Rizzo supra,* found violations of Title VIII of the Civil Rights Act of 1968 but not violations of the 1964 Act. Having found that appellants were entitled to jury trial under 18 U.S.C. §§ 402 and 3691, Judge Bechtle did not address the Section 2000h argument.

On the issue of the jurisdiction of a United States Magistrate to try a criminal contempt, Judges Pollak, Shapiro and Bechtle agree that 18 U.S.C. § 3401(a) permits a magistrate to try contempt cases · if the contempt prosecuted amounts to a misdemeanor.[3] As the potential sentences in these contempt cases were limited pre-trial, the magistrates had jurisdiction to try appellants for criminal contempt pursuant to § 3401(a). Judges Pollak and Shapiro found, however, that because proper waivers were not made by the appellants as required by 18 U.S.C. § 3401(b), the magistrates did not have jurisdiction to try these contempt cases. The relevant portion of Section 3401(b) states:

> . . . The magistrate shall carefully explain to the defendant that he has a right to trial, judgment and sentencing by a judge of the district court . . . The magistrate shall not proceed to try the case unless the defendant, after such explanation, files a written consent to be tried before the magistrate that specifically waives trial, judgment and sentencing by a judge of the district court.

As the forms signed by appellants stated consent "to be tried and to have the charges against me disposed of before a United States Magistrate," Judges Pollak and Shapiro found that the waiver requirements of 18 U.S.C. § 3401(b) were not satisfied.

■ Apparently, the waiver issue was not raised before Judge Bechtle because he does not address it in his memorandum. However, appellants in the instant case did argue the issue before me, and I find that the consent form signed by them fulfills the requirements of section 3401(b). It is true that the language of the form does not track the language of the statute in that it authorizes the magistrate to "dispose" of the charges rather than to "judge and sentence." However, I do not believe that the mandate of section 3401(b) for a *specific* waiver of trial, judgment and sentence requires that the waiver form contain that exact language. As long as the appellants were informed fully of their rights to trial before a district court judge, and there is no suggestion that they did not receive this information, I believe that the consent form they signed adequately meets the statute's requirement of a specific waiver of trial, judgment and sentencing by a judge of the district court. I do not know how the phrase "to be tried and to have the charges against me disposed of" could be interpreted other than as authorizing the magistrate to judge and sentence as well as to conduct the trial.

■ Finally, I reach the appellants' argument that Judge Broderick's order is constitutionally overbroad, infringing on their First Amendment rights by prohibiting "a wide range of constitutionally protected activity in a substantial portion of the Whitman community, much of which could not possibly interfere with the building of the Townhouse project." (p. 23, appellants' brief.) Like Judge Bechtle, I find that given the history of attempted interference with the construction of the Whitman housing project, the injunction represents a rea-

---

**3.** However, 28 U.S.C. § 636(e) prohibits magistrates from trying contempts committed in their own proceedings. Such matters must be certified to the district court for trial.

sonable time, place and manner regulation of First Amendment activity.[4]

For the foregoing reasons, I will deny the appellants' motions for a new trial and enter an order sustaining their convictions for criminal contempt.

## ORDER

AND NOW, this 30th day of July, 1981, for the reasons stated in the accompanying memorandum, IT IS ORDERED that the judgments of conviction and sentence of appellants Bernadette Gedraitis, Helen Moore, Florence Johnson, Maria Hamilton, Joan Donnelly and Sophia Pierce are AFFIRMED and the judgments of conviction and sentence of appellants Mary Scheffler and Jean McQuilkin are REVERSED and judgments of acquittal are entered in their favor.

---

**4.** The joint opinion of Judges Pollak and Shapiro does not discuss this issue.