**UNITED STATES of America**

v.

**Bernadette GEDRAITIS, Appellant in 81–2653.**

**Appeal of Helen Moore, 81–2654.**

**Appeal of Florence Johnson, 81–2655.**

**Nos. 81–2653 to 81–2655.**

United States Court of Appeals, Third Circuit.

Argued April 27, 1982.

Decided Oct. 12, 1982.

As Amended on Denial of Rehearing and Rehearing In Banc Nov. 12, 1982.

Edward H. Weis and Steven A. Morley (argued), Joseph M. Miller, Defender Ass'n of Pa., Philadelphia, Pa., for appellants.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr. and Lynell Staton, Asst. U. S. Attys. (argued), Philadelphia, Pa., for appellee.

Before ALDISERT, WEIS and BECKER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

This court is no stranger to the controversy surrounding the Whitman Park Townhouse Project in Philadelphia. This time we review the validity of contempt convictions tried by a federal magistrate and affirmed by the district court. We reject contentions that the magistrate lacked jurisdiction, the defendants were entitled to a jury trial, and the injunction they disobeyed was overbroad. After carefully reviewing the record, we conclude that the evidence was insufficient as to one defendant, but adequate to support the convictions of the two other defendants who appealed.

Although a low-income housing project in the Whitman area of South Philadelphia had been planned as early as 1956, neighborhood opposition prevented it from being built for many years. In 1976, the United States District Court directed the municipal and federal authorities to "immediately take all necessary steps" for the construction of the dwellings. *Resident Advisory Board v. Rizzo,* 425 F.Supp. 987, 1029 (E.D. Pa.1976), *aff'd. as modified,* 564 F.2d 126 (3d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978).

After neighborhood residents began interfering with construction, the district court issued a temporary restraining order on March 14, 1980, followed by a permanent injunction on April 1, 1980. The court order enjoins the Whitman Area Improvement Council, the Whitman Council, Inc., and "all other persons acting in concert with them or otherwise participating in their aid," from obstructing work on the townhouses. It also forbids picketing and protesting at the site, subject to certain time, place and manner exceptions.

On the morning of June 3, 1980, a large crowd gathered at a prohibited area of the construction site and blocked the gates. The United States Marshal came to the scene and, at about 11:35 a. m., announced over a bull horn that the people on the street were violating the court order. He warned them that they would be arrested unless they left the area.

After a majority of the demonstrators refused to disperse, the Marshal called for police vans. As they arrived, people queued up to enter. Meanwhile, a Philadelphia police officer used the bull horn to announce repeatedly, "If you are not going to be arrested, please clear the street." Some of the people walked away; others remained and filed into the vans. More than 50 of the demonstrators volunteered for arrest in this fashion.

Those arrested were charged with criminal contempt for violating the injunction. 18 U.S.C. § 401. The district court referred the numerous cases to the U. S. Magistrates for the district, "provided that the potential penalties for such contempts do not exceed misdemeanors, as defined in 18 U.S.C. § 1." The three defendants were joined for trial along with other alleged demonstrators, and the magistrate granted a motion by the government to limit sentence to six months' imprisonment or a $500 fine. After the magistrate explained their right to a trial before a district judge, the defendants signed a waiver consenting "to be tried and to have the charges against me disposed of before a United States Magistrate."

The magistrate denied the defendants' demand for a jury, conducted a bench trial, and made detailed findings of fact. He found eight defendants guilty, including appellants Gedraitis, Moore and Johnson, and sentenced them to two years probation. The district court affirmed six of the convictions. *United States v. Gedraitis,* 520 F.Supp. 84 (E.D.Pa.1981). In this court the defendants challenge the denial of a jury trial, the magistrate's jurisdiction, the constitutionality of the injunction, and the sufficiency of the evidence.

## I.

## THE JURY TRIAL DEMAND

The defendants assert statutory entitlements to a jury trial. Under 18 U.S.C.

§§ 402 and 3691, a person charged with willfully disobeying an order of a district court by an act which is also a criminal offense under federal or state law may demand a trial by jury.[1] Neither section applies, however, to contempts committed in disobedience of an order entered in "any suit or action brought or prosecuted in the name of, or on behalf of, the United States." *Id.*

▇ The April 1st order the defendants were charged with violating was issued in response to a motion of the plaintiffs in *Resident Advisory Board v. Rizzo.* Although it was a defendant in that suit, the Department of Housing and Urban Development joined in the plaintiffs' request for an injunction. Since the injunction therefore was entered in an action brought "on behalf of" the United States, the district court correctly held that §§ 402 and 3691 did not entitle the defendants to a jury trial. *See also United States v. Wright,* 516 F.Supp. 1113, 1115–18 (E.D.Pa.1981). *But see United States v. Pyle,* 518 F.Supp. 139, 145–58 (E.D.Pa.1981).

▇ The defendants also rely on 42 U.S.C. § 2000h, which permits the accused to demand a jury trial "[i]n any proceeding for criminal contempt arising under" Titles II through VII of the Civil Rights Act of 1964. Although the City of Philadelphia was found liable for violating Title VI in *Residents Advisory Board v. Rizzo,* the Whitman Council was not. Moreover, the City of Philadelphia was not a defendant in the underlying injunction action against Whitman. Consequently, Title VI played no part in these contempt proceedings because the defendants' culpability arises solely under the injunction. Indeed, the district court invoked its "inherent powers to protect and effectuate its prior judgment" when it enjoined Whitman Council from

interfering with the construction project. We therefore agree with the court below that § 2000h does not apply here. *See also United States v. Wright,* 516 F.Supp. at 1118.

## II.

### THE MAGISTRATE'S JURISDICTION

A person accused of committing contempt in a magistrate's proceeding must be tried by a judge of the district court. 28 U.S.C. § 636(e). Since a magistrate cannot preside over a contempt committed before him, the defendants argue that he has no jurisdiction to try a contempt of a district judge's order.

We are not persuaded by this reasoning. Magistrates have the power to conduct trials under 18 U.S.C. § 3401,[2] which provides that those who are specially designated to exercise such jurisdiction by the district court may try persons accused of, and sentence persons convicted of, misdemeanors. A misdemeanor is any offense punishable by a term of imprisonment not exceeding one year. 18 U.S.C. § 1.

▇ Contempt does not fall within the general classification of felony or misdemeanor because it is punishable "by fine or imprisonment" at the discretion of the court. 18 U.S.C. § 401. Accordingly, in determining whether the constitutional right to a jury trial attaches to a prosecution for criminal contempt, the Supreme Court has held that the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense. *Frank v. United States,* 395 U.S. 147, 149, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). A sentence of as much as six months in prison, plus normal periods of probation, may be imposed without a jury

---

1. 18 U.S.C. § 402 provides:

   Any person ... willfully disobeying any lawful ... order ... of any district court of the United States ... by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws

   of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title.... 18 U.S.C. § 3691 states that "the accused, upon demand therefor, shall be entitled to trial by a jury...."

2. *See* 28 U.S.C. § 636(a)(3).

trial. *Muniz v. Hoffman,* 422 U.S. 454, 476, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975). When the actual sentence is that short, the contempt is treated as a petty offense. *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974).

■ We believe this analysis also applies in determining whether a contempt is a misdemeanor within the scope of a magistrate's jurisdiction. The district court referred the trial of these cases to the magistrate, "provided that the potential penalties for such contempts do not exceed misdemeanors, as defined in 18 U.S.C. § 1." In pretrial proceedings, the magistrate granted the government's motion to limit sentence to a $500 fine or imprisonment for six months—thus making the contempt a petty offense. 18 U.S.C. § 1(3). After trial, the magistrate sentenced the defendants to two years' probation. Therefore, these contempt cases clearly fell within the magistrate's misdemeanor jurisdiction. *See also United States v. Pyle,* 518 F.Supp. at 143–44; *United States v. Wright,* 516 F.Supp. at 1118–19.

■ The defendants also contend that the forms they signed, consenting "to be tried and to have the charges against me disposed of before a United States Magistrate," were not an adequate waiver of their right to trial by a district judge. Under 18 U.S.C. § 3401(b), as amended in 1979:

> "The magistrate shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a judge of the district court.... The magistrate shall not proceed to try the case unless the defendant, after such explanation, files a written consent to be tried before the magistrate that specifically waives trial, judgment, and sentencing by a judge of the district court."

According to the defendants, a valid waiver form must track the exact language of the statute, including the words "judgment, and sentencing."

We do not agree. Before it was amended in 1979, § 3401(b) required defendants to sign "a written consent ... that specifically waives ... a trial before a judge of the district court...." Describing the proposed amendment, the Senate Judiciary Committee said that "[t]he bill retains the present requirement that the magistrate not try any misdemeanor offense unless the defendant consents to such trial in writing." [1979] U.S.Code Cong. and Adm.News, 1469, 1474. The report continued:

> "During the year ended June 30, 1978, magistrates disposed of 102,547 defendants in minor offense cases. Of that number, there were 87,654 defendants charged with petty offenses, few of whom chose to exercise their absolute right to demand trial before a district judge. The requirement that each of these defendants sign a written form to be tried before a magistrate lengthens the time needed to hear each case and produces a growing volume of unnecessary paperwork. However, the Committee feels further empirical evidence of how the magistrates system works is necessary before it considers removing the written consent requirement."

*Id.* In sum, there is simply no indication in the legislative history that Congress attached any importance to its addition of the words "judgment, and sentencing" to the statute.

The defendants were represented by counsel at their arraignment. They signed the consent forms only after the magistrate explained their right to a trial before him or a district judge. As the court below said, "I do not know how the phrase 'to be tried and to have the charges against me disposed of' could be interpreted other than as authorizing the magistrate to judge and sentence as well as to conduct the trial." 520 F.Supp. at 90. *But see United States v. Wright,* 516 F.Supp. at 1119. Since we have no doubt that the defendants were fully informed of their rights when they chose to proceed before the magistrate, we conclude that the requirements of the statute were satisfied.

## III.

### THE SCOPE OF THE INJUNCTION

■ Paragraph 1 of the injunction forbids "[p]icketing, protesting, rallying, demonstrating or similarly assembling in the Whitman Construction Site Area." Exceptions are made for one informational picket at each gate, and for rallies and demonstrations in a designated area of the site.

Although the defendants concede that expressive conduct in a public forum is subject to reasonable restrictions as to time, place and manner, they assert that the injunction sweeps too broadly. As mentioned above, however, the April 1 order is not a blanket proscription against all protest action. In view of the strong governmental interest in bringing this long-delayed, racially-integrated housing project to completion, as well as the history of interference with construction, we do not find the injunction overbroad. *See Aiello v. City of Wilmington,* 623 F.2d 845 (3d Cir. 1980); *United States v. Pyle,* 518 F.Supp. at 158–60.

## IV.

### SUFFICIENCY OF THE EVIDENCE

A series of photographs taken by a police photographer between 8:40 a. m. and noon shows the demonstrators assembled in a prohibited area of the construction site. Photograph 6–47, taken at about 11:35 a. m., depicts the United States Marshal announcing over a bull horn to the crowd that they were in violation of the injunction. Demonstrators were also videotaped as they entered the police vans. The defendants ·contend that the photographs showing them at the site do not provide sufficient evidence to support a finding that they received notice of the injunction from the Marshal's announcement.

In addition to the photographs, the government introduced local newspaper accounts of the injunction that appeared when the order was issued. There was testimony that before the Marshal arrived,

the attorney for Whitman Council circulated among the crowd and told people to leave the area. A Deputy Marshal also advised some members of the crowd about the injunction.

■ We accept the defendants' contention that in the circumstances of this case none of this additional evidence proved actual notice to them. However, we agree with the district court that the magistrate had an adequate basis for concluding that the Marshal's announcement over the bull horn did provide notice to those present. We reached the same conclusion in a companion case, *United States v. McQuilken,* 673 F.2d 681 (3d Cir. 1982). We turn, therefore, to consider the evidence against each defendant.

■ Florence Johnson was identified in photographs 6–26, 6–27, 6–28, 6–29 and 6–31, all taken between 10:15 a. m. and 10:30 a. m. She was carrying a sign and apparently acting as an informational picket, which is permitted by the injunction. The last photographs show her leaving the area. The magistrate found specifically that her actions were not contemptuous before she departed. The evidence does not show when she returned to the area except that she was among those who voluntarily submitted to arrest.

There was no evidence that Johnson returned to the site before the United States Marshal made his announcement to the demonstrators and there was no other evidence of notice to her. Her absence from the scene during the critical time is a fatal flaw in the prosecution's case, and requires that her conviction be vacated. Since the evidence was insufficient as to Johnson, a judgment of acquittal must be entered. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

■ Helen Moore was identified in photographs 6–40, taken between 10:30 and 11:00 a. m., and 6–43, taken between 11:00 and 11:20 a. m. She is depicted standing on

the street in an area prohibited by the terms of the injunction. She also volunteered for arrest after the Marshal's announcement and was among those videotaped entering a van.[3] The magistrate found that she had notice, failed to leave the area, and accordingly was guilty of contempt. We agree.

Bernadette Gedraitis is seen in the prohibited area in photographs 6–42 and 6–45, both taken between 11:00 a. m. and 11:20 a. m. She was also identified in a photograph marked 6–49, taken soon after the Marshal's announcement. Hence, Gedraitis was photographed shortly before and after the announcement. In addition, the magistrate found that she "voluntarily submitted to arrest," further evidence of her presence at the scene. Thus, there is sufficient proof of notice to support her conviction as well.

It is somewhat misleading to refer to the defendants' conduct as "submitting to an arrest." As the magistrate described their actions, the defendants "volunteered" to be arrested. They lined up in an orderly fashion to enter the vans and chose to enter them, despite being given every opportunity to leave. As the people entered the vans, other demonstrators sang and cheered them on. The police did not take affirmative steps to arrest anyone.

Finally, the defendants assert that there is no evidence that they were arrested at the scene because they were not identified in the videotape of the people entering the police vans.[4] But at the hearing, defense counsel objected to any evidence about the arrests as being irrelevant and prejudicial. In his closing argument with respect to

Helen Moore, for example, counsel noted her presence in the photographs taken before the Marshal's announcement and then said, "Again, the next piece of evidence we have is that she chose to be arrested." Indeed, in all the summations, counsel took no issue with the premise that the defendants were arrested at the scene. Their argument on appeal is directly contrary to their positions at trial.

The only evidence as to the arrests was that the demonstrators voluntarily got into the vans and then were taken to the federal courthouse. There was no testimony that there were any other arrests at any other time. The magistrate therefore could properly infer that the only arrests occurred at the scene, and that the defendants were among those taken into custody.

We have reviewed the record of this case in detail and are satisfied that the evidence as to defendants Helen Moore and Bernadette Gedraitis was sufficient to support their convictions. Accordingly, the judgment as to them will be affirmed. The judgment as to Florence Johnson will be vacated and the matter remanded to the district court for entry of judgment of acquittal.

---

**3.** This court carefully examined the photographs and the videotape which are part of the record. An appellate court may uphold a judgment on the basis of evidence in the record even on a different theory than that adopted in the trial court. *Jurinko v. Edwin L. Wiegand Co.,* 477 F.2d 1038, 1045 (3d Cir.), *vacated on other grounds,* 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973), and is entitled to examine the entire record before concluding whether the result reached in the trial court is correct or

erroneous. *Tanzer v. Huffines,* 408 F.2d 42, 45 (3d Cir. 1969). In a nonjury criminal case such as this, in determining sufficiency of evidence, the appellate court may review the whole record. Thus, even though the magistrate did not refer in his findings of fact to some of the photographs we have described, we may rely on them nevertheless.

**4.** As noted earlier, we have reviewed the videotapes and do not agree with the contention as to Helen Moore.