UNITED STATES of America

v.

**Elizabeth PHILLIPS, Florence Romanow-ski, Frances Wolfinger, John Riecky, Joseph Evers, Robert Brown.**

Crim. Nos. 80–0285 to 80–0289 and 80–0291.

United States District Court, E.D. Pennsylvania.

April 18, 1983.

Peter F. Vaira, Jr., U.S. Atty., Walter S. Batty, Jr., Stephen V. Wehner, Asst. U.S. Attys., Philadelphia, Pa., for the U.S.A.

Anna M. Durbin, Defender Ass'n of Phila., Philadelphia, Pa., for Frances Wolfinger, appellant.

Donald G. Joel, Philadelphia, Pa., for appellants.

MEMORANDUM

GILES, District Judge.

Each defendant appeals from a conviction before United States Magistrate Powers on charges of criminal contempt of an April 1, 1980 permanent injunction order issued by the United States District Court for the Eastern District of Pennsylvania in the Whitman Park case, *Resident Advisory Board v. Frank L. Rizzo,* 425 F.Supp. 987 (E.D.Pa.1976), *aff'd as modified,* 564 F.2d

126 (3d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978). In part, the order limited picketing to the area immediately surrounding the Whitman Park Townhouse Project then under construction.

On the morning of June 4, 1980, a blocking incident occurred near the "east gates" of the "north lot" of the Whitman Townhouse project on Shunk Street between Front and Second Streets in South Philadelphia. The Government presented photographic evidence and a videotape which placed each of the defendants in areas where demonstrating was prohibited under the terms of the district court order at some time between 9:00 a.m. and 10:15 a.m. Shortly after 9:00 a.m., United States Marshal Paul Boyle, announced over a police bull horn that he was a United States Marshal and that the demonstrators were to disband from in front of the gates and were not to interfere or impede the flow of traffic to and from the construction site. He further stated that they had one minute to leave the area or would be arrested. The videotape shows that some members of the crowd responded "five, five," a response the Government contends referred to the five minutes which demonstrators had been given to disperse during a disturbance which occurred the previous day at the same location.

It is agreed that in the use of his bull horn to speak to the crowd, Boyle did not mention the existence of a court order or reference any order. His exact words were:

> As a United States Marshal I am ordering you to disband in front of these gates and not to impede or interfere with any of this traffic. You have one minute to leave—if you don't, you'll be arrested.

After Boyle's announcement, some members of the crowd left the scene. Boyle testified that he then walked among those that remained, again conveying the message that those who did not leave would be arrested. Defendant Brown was one such person who was told by Boyle "that he was in violation of the order, that he was block-ing [a] truck from entering the lot." (N.T. 54). Minutes later, Philadelphia Police vans were backed onto Shunk Street and eleven persons, including the defendants, were taken into custody.

The record shows that in speaking to Brown, Boyle did not state that he was acting pursuant to an order of the district court. He merely stated that Brown was in violation of "the order." *Compare U.S. v. Gedraitis,* 690 F.2d 351 at 353 (U.S. Marshal announced that people were violating the court order).

■ Each of the defendants was arrested and charged with willful violation of the injunction after allegedly refusing to disperse from the restricted area. The defendants were arraigned on the criminal contempt charges the same day and released on bail. Because the Government moved to limit any possible sentence to a maximum of six months imprisonment or a $500.00 fine, defendants' jury trial demands were properly denied. *See Muniz v. Hoffman,* 422 U.S. 454, 475–76, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975); *U.S. v. Gedraitis,* 690 F.2d at 354 (3d Cir.1982).

Defendants were tried before Magistrate Richard A. Powers, III on July 30, 1980. Each was found guilty of criminal contempt. Imposition of sentence was suspended and a three year probation period imposed. Timely appeals were filed to this court.

All defendants have raised, *inter alia,* issues attacking the sufficiency of the evidence adduced at trial. On review of a conviction, the evidence must be viewed in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Wright,* 516 F.Supp. 1119, 1121 (E.D.Pa.1981). Even so, because I find there was insufficient evidence to show that any of the defendants had actual notice of the district court order and that the notice to Brown of the existence of "an order" was impermissibly vague, I shall reverse the convictions.

■ It is fundamental that to convict for contempt of a court order the alleged contemnor's knowledge of that order must be established. *United States v. McQuilkin,* 673 F.2d 681 (3d Cir.1982); *Farber v. Rizzo,* 363 F.Supp. 386 (E.D.Pa.1973); *United States v. Hall,* 472 F.2d 261 (5th Cir.1972); *In re Rubin,* 378 F.2d 104 (3d Cir.1967). Furthermore, where, as in the present case, a citation for criminal contempt is sought, the government must establish beyond a reasonable doubt that the alleged contemnor had actual knowledge of the court order, not mere constructive notice. *Finney v. Arkansas Board of Correction,* 505 F.2d 194, 213 (8th Cir.1974); *Richmond Black Police Officers Ass'n v. City of Richmond,* 548 F.2d 123, 129 (4th Cir.1977); *Wright,* 516 F.Supp. at 1121; *Commonwealth v. Gaston,* 460 Pa. 385, 333 A.2d 779 (1975); *cf., Thompson v. Johnson,* 410 F.Supp. 633, 640 (E.D.Pa.1976), *aff'd* 556 F.2d 568 (3d Cir. 1977) (civil contempt requires actual knowledge); *East Caln Township v. Carter,* 440 Pa. 607, 269 A.2d 703 (1970) (semble).

In the present case, none of the appellants were parties to *Resident Advisory Board v. Rizzo,* nor was there any evidence that they were members of any of the Whitman Park organizations represented by Joseph Gindhart, Esquire, to whom a copy of the injunction was served. Nor does the Government contend that copies of the order were posted on the scene. The mere docketing of the court order did not serve to give defendants actual notice of its existence.

■ The Government's attempt to impute to defendants actual knowledge of the district court order by introducing evidence that it was publicized in all four major Philadelphia daily newspapers falls far short. The mere fact that there was publicity does not charge defendants with actual notice of the order or its contents.[1] No evidence was produced that any defendant had read the relevant local papers or perti-

nent parts thereof. *See U.S. v. Gedraitis,* 690 F.2d at 356.

The Government also attempted to infer actual knowledge of the court order to the defendants because unidentified members of the crowd of which defendants were a part, shouted "five, five" when Boyle made his bull horn announcement. No evidence was adduced to show either that defendants joined in the shout and appreciated its supposed significance or were present at or knew of the previous day's proceedings at the site. The fact that some other persons in the crowd moved does not establish defendants' actual knowledge of a court order.

■ The Government urges that because defendants voluntarily entered the police vans, that was evidence they were at the construction site attempting to get arrested and that such an attempt implied their awareness of the terms of the federal order. While this conduct may be consistent with a willingness to be arrested for a cause or no cause at all, it is not evidence of knowledge of a court order or the legal authority upon which Marshal Boyle purported to act.

■ With respect to Brown, the evidence shows that although Boyle told him that his conduct was in violation of "the order," no explanation or description of the order was given to allow the conclusion that Brown knew Boyle was referring to a court order, state or federal, as opposed to Boyle's preceding bull horn directions which did not reference a court order.

For these reasons, I find that the Government cannot be said to have established guilt beyond a reasonable doubt. The convictions shall be reversed and vacated. The other assignments of error need not be addressed.

An appropriate order follows.

---

1. At a minimum, the alleged contemnors must have had knowledge of the existence of a court order and that the order prohibited the conduct engaged in by the protestors. Under the circumstances of this case, the actual reading of the terms of the court order would not have been required.