23 F.3d 404
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carson E. McCABE, Defendant-Appellant.
 No. 93-5384.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 9, 1994.
Decided April 29, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville. Malcolm J. Howard, District Judge. (CR-93-26-CR-3-H, CR-90-72-CR-3-H)
 Gale Murray Adams, Asst. Fed. Public Defender, Fayetteville, N.C., for appellant.
 Tracy David Knox, Office of the Staff Judge Advocate, Fort Bragg, N.C., for appellee.
 On brief: James R. Dedrick, U.S. Atty., Scott E. Zipprich, Sp. Asst. U.S. Atty., Office of the Staff Judge Advocate, Fort Bragg, N.C., for appellee.
 E.D.N.C.
 REVERSED.
 Before ERVIN, Chief Judge, and RUSSELL and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Carson McCabe appeals the district court's order affirming the magistrate judge's revocation of his supervised release and imposition of an additional twelve-month term of imprisonment. We reverse.
 
 
 2
 * On December 24, 1989, McCabe was arrested for drunk driving. Because this offense occurred on the grounds of Fort Bragg, a federal military base in North Carolina, McCabe was initially charged in an "Information for Misdemeanor" with violating North Carolina's "impaired driving" statute, N.C.G.S. Sec. 20-138.1, as assimilated by 18 U.S.C. Sec. 13. The information noted that "said offense does not subject McCabe to the level one punishment standard set by N.C.G.S Sec. 20-179(g) ...," the maximum sentence range for "impaired driving" offenses.[1] At the sentencing hearing, the government argued that the state sentencing statute called for a level two punishment because of the presence of a "grossly aggravating factor," i.e., a 1987 conviction for impaired driving.[2] Under N.C.G.S. Sec. 20-179(h), level two permits a sentence of incarceration of between seven days and twelve months. The sentence was set at twelve months in prison to be followed by twelve months supervised release. McCabe appealed the sentence of one year, and we affirmed. United States v. McCabe, No. 91-5787 (4th Cir.1991) (unpublished).[3]
 
 
 3
 McCabe served his full prison sentence, and his supervised release began on July 29, 1992. Eight months into the supervised release term, his probation officer filed a petition for revocation on the grounds that McCabe had again been arrested for driving while impaired as well as driving while his license was revoked; he was also charged with failing to report the arrest to his probation officer within seventy-two hours. After a hearing, the magistrate judge found that all three violations had been established.
 
 
 4
 McCabe argued that his total exposure to prison under the assimilated impaired driving statute was one year. The magistrate judge reasoned, however, that "the North Carolina courts see [drunk driving] as a general misdemeanor punishable by 2 years in jail, regardless of the level that might be determined at a sentencing hearing." Thus, he concluded that the one year in prison, plus an additional year upon revocation of supervised release, was within the maximum cap of two years under state law. McCabe's supervised release was revoked and he was sentenced to an additional twelve-month prison term. The district court affirmed, and McCabe appeals.
 
 II
 
 5
 In order to enable federal authorities to prosecute for offenses that are committed on federal lands, e.g., military bases and national parks, and for which there are no federal criminal statutes on point, e.g., drunk driving, the Assimilative Crimes Act (ACA) incorporates the substantive criminal law of the surrounding state into the body of federal criminal law and authorizes the prosecution of offenders in federal courts under such state laws. The relevant section of the ACA, 18 U.S.C. Sec. 13(a), provides as follows:
 
 
 6
 Whoever within or upon [federal lands] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.
 
 
 7
 McCabe contends that the ACA's mandate of "like punishment" was violated because he was sentenced to twenty-four months in prison when he could have been sentenced to no more than twelve months had he been sentenced in the state court for the same offense. We agree.
 
 
 8
 Although the state substantive law is used to define the elements of gan assimilated crime, a defendant is sentenced under the Sentencing Guidelines. See 18 U.S.C. Sec. 3551(a) and U.S.S.G. Sec. 2X5.1, comment. (backg'd.). The rule in this circuit is that "federal court sentences of assimilated crimes must fall within the minimum and maximum terms established by state law, and that within this range of discretion federal judges should apply the Sentencing Guidelines to the extent possible." United States v. Young, 916 F.2d 147, 150 (4th Cir.1990). In McCabe's case, there was no analogous guideline for the offense of drunk driving, so he was essentially sentenced as a state defendant. See U.S.S.G. Sec. 2X5.1. For the reasons that follow, we believe that one year imprisonment is the limit to which McCabe could be required to serve.
 
 
 9
 * At the initial sentencing stage, the magistrate judge was clearly limited to sentencing McCabe to no more than one year in prison. Young holds that the parameters of state law establish a "range of discretion" for the federal court. This discretionary range is clearly intended to be congruent with the range of discretion available to a state court under the same circumstances.[4] In McCabe's case, the range was determined by first looking to the limits with regard to the generic offense of impaired driving (two years). The range was further limited upon the finding of a grossly aggravating factor; this finding was not the result of an exercise of discretion by the magistrate judge. That the aggravating factor was determined with reference to the sentencing scheme rather than the substantive statute is not determinative. The important point is this--a state court would not have had the discretion to impose a prison sentence in excess of one year, and neither should the federal court.
 
 B
 
 10
 There is another, independent reason for holding that one year was the upper limit available to the sentencing court in this case. The magistrate judge could not have initially sentenced McCabe to more than one year in prison because such a sentence would clearly have exceeded the court's jurisdiction. See 18 U.S.C. Sec. 3401 (magistrate judges may only hear misdemeanor cases); 18 U.S.C.Sec. 3581 ("misdemeanor" includes an offense for which the maximum allowable incarceration is one year or less); see also United States v. Kelly, 989 F.2d 162, 163 (4th Cir.), cert. denied, 114 S.Ct. 158 (1993). The government apparently recognized this jurisdictional border when, as evidenced by the information, it prosecuted McCabe with the express understanding that McCabe would not be subject to level-one punishment. Thus, regardless of the state law, the maximum prison sentence was established by the government's choice (and the defendant's acquiescence) to proceed before a magistrate judge. See id. (holding that magistrate judge had jurisdiction to try defendant on assimilated state misdemeanor subject to a maximum penalty of eighteen months in prison under state law, where magistrate judge "assumed jurisdiction with the understanding that the maximum sentence of imprisonment imposable by him would be 12 months."); cf. United States v. Gedraitis, 690 F.2d 351, 355 (3rd Cir.1982) (upholding jurisdiction of magistrate to try contempt charges because referral by district court included provision that " 'potential penalties for such contempts do not exceed misdemeanors, as defined in 18 U.S.C.Sec. 1.' "), cert. denied, 460 U.S. 1071 (1983). Determining the maximum sentence available to the court at the initial sentencing stage, however, does not end our inquiry.
 
 III
 
 11
 The maximum level-two term of imprisonment was exceeded by means of a revocation of a term of supervised release. In ruling on the revocation petition, the magistrate judge disregarded the earlier consensus that McCabe was subject to a level-two sentence only and determined instead that the relevant maximum term "established by state law" was the level-one, two-year maximum for impaired driving. In support of this ruling, the magistrate judge relied on State v. Santon, 101 N.C.App. 710, 401 S.E.2d 117 (N.C.1991), cert. denied, State v. Kellam, 413 S.E.2d 556 (1992). Santon, who stood convicted of involuntary manslaughter, had previously been convicted of driving while impaired and had received a maximum level five sentence of sixty days. In sentencing for manslaughter, only those prior convictions for offenses "punishable by more than 60 days confinement" could be considered as aggravating factors. The state court reasoned that the offense of impaired driving was "punishable" by two years, irrespective of the level ultimately reached after consideration of the various mitigating and aggravating factors. We believe, however, that reasoning ignores the significance of the "range of discretion" concept recognized in Young. The court was prohibited from imposing an additional sentence upon revocation for essentially the same reasons that limited the sentencing range at the initial sentencing stage.
 
 
 12
 * The government points to a number of decisions that have affirmed total prison sentences exceeding the statutory maximum when the additional sentence is for violation of supervised release, though none of these decisions involved assimilated crimes. See United States v. Purvis, 940 F.2d 1276, 1279 (9th Cir.1991) ("We hold today that Sec. 3583[5] authorizes the revocation of supervised release even where the resulting incarceration, when combined with the period of time the defendant has already served for his substantive offense, will exceed the maximum incarceration permissible under the substantive statute."); United States v. Jamison, 934 F.2d 371 (D.C.Cir.1991) (same).[6] We have not yet addressed the precise question of the legality of a term of imprisonment imposed upon revocation of supervised release that, when combined with the initial term of sentence of imprisonment, exceeds the maximum term of incarceration permitted for the underlying offense.[7] As discussed above, the maximum in this case may be seen as having been established in this case by state sentencing law, by federal limits on the jurisdiction of the magistrate judge to try criminal cases, or by the government's decision to limit the sentence to the equivalent of a level-two sentence. Without deciding the larger question of whether the statutory maximum may ever be exceeded in the context of revocation of supervised release, we are of the opinion that the ACA limited the court's authority in this case to sentence McCabe to no more than a total of one year in prison.
 
 B
 
 13
 Prior to the advent of the Sentencing Guidelines, we held that the $50 assessment levied on all convicted felons in federal court pursuant to 18 U.S.C. Sec. 3013 is punitive and may not be imposed on a defendant under an ACA conviction unless the state has a similar levy. United States v. King, 824 F.2d 313 (4th Cir.1987). The issue in King centered on the tension between the ACA's mandate of "like punishment" and a federal statute that specifically mandated the assessment of a fee on any person "convicted of an offense against the United States." 18 U.S.C. Sec. 3013 (1982).[8] An offense under the ACA is an "offense against the United States," yet we reasoned that the "like punishment" limitations of the ACA took precedence. This principle of strict adherence to the ACA's "like punishment" militates against permitting the Guidelines to effectively double the prison sentence to which McCabe could have been exposed had he been prosecuted for the same offense in the state courts.
 
 C
 
 14
 Even if it is assumed that a violation of supervised release generally opens the door to a total sentence in excess of the statutory maximum, the ACA superimposes a limit in cases where the state from which the substantive criminal statute is borrowed has no provision analogous to supervised release. The statutory basis in the nonACA cases of Purvis and Jamison, 18 U.S.C. Sec. 3583, only provides that a sentence may include a supervised release term. Our review of North Carolina law has uncovered no provision that would permit the maximum level-two prison term of one year to be exceeded upon the revocation of a state counterpart to the Guidelines' supervised release. Absent such an analogous state sentencing procedure, the ACA's mandatory, albeit inexact, directive to impose "like punishment" trumps any discretionary authority to stack a term of incarceration for violation of supervised release atop a prison term already at the maximum.
 
 
 15
 We reverse the order of the district court affirming the magistrate court's order revoking supervised release.
 
 REVERSED
 
 
 [1]
 Under the scheme set forth in N.C.G.S. Sec. 20-179, the sentencing court must consider various factors, e.g., prior convictions, before placing the defendant into one of five "punishment levels." Each of these levels sets an allowable range of incarceration, e.g., level one provides for a prison term of between fourteen days and twenty-four months. The court must then weigh other factors (e.g., property damage, alcohol level over .20) in deciding where in the allowable range to set the sentence
 
 
 [2]
 Under N.C.G.S. Sec. 20-179(c)(1), a single impaired driving conviction within the previous seven years constitutes a "grossly aggravating factor" which, if found by the sentencing court, mandates the imposition of level two punishment
 
 
 [3]
 In our decision affirming McCabe's sentence, we did not discuss the supervised release portion of the sentence; we held only that "the maximum sentence of one year was not plainly unreasonable." McCabe, slip op. at 4. Of course, the imposition of a term of supervised release presupposes the possibility of revocation and the imposition of an additional term of imprisonment. In the instant appeal, however, the government has not argued that McCabe has waived any issues by his failure to raise them on direct appeal
 
 
 [4]
 Prior to the advent of the Sentencing Guidelines, we had held that the ACA assimilated not only laws relating to the definition and scope of an offense, but also laws relating to the manner in which an offense is to be punished. See United States v. Price, 812 F.2d 174, 175 (4th Cir.1987) (holding that North Carolina's Fair Sentencing Act requirements were assimilated by the ACA)
 
 
 [5]
 One of the guidelines statutes, 18 U.S.C. Sec. 3583, provides that a court "may include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment...."
 
 
 [6]
 A slightly different rationale is that the additional incarceration for violation of supervised release is a separate punishment authorized by Congress. United States v. Celestine, 905 F.2d 59, 60 (5th Cir.1990) ("[I]t was Celestine's violation of the conditions of supervised release rather than the underlying offense conduct [ ] that led to Celestine's current incarceration."). The Sentencing Commission explicitly rejected the approach that would sanction violations of probation and supervised release as if the violation were "new criminal conduct." U.S.S.G. Ch.7, Pt.A(3)(b) (Nov.1993); see United States v. Penn, --- F.3d ----, No. 93-5190 (4th Cir. Feb. 17, 1994) (probation violators are not sentenced for new federal criminal conduct)
 
 
 [7]
 In Kelly, we affirmed a sentence of "one year incarceration, six months of which were suspended, to be followed by one year of supervised release ...," that was imposed by a magistrate judge. Kelly did not involve a prison sentence in excess of one year
 
 
 [8]
 The special assessment statue was amended shortly after our decision in King to specifically provide that an offense charged under the ACA "is an offense against the United States." See Pub.L. 100-185, Sec. 3, Dec. 11, 1987. Although we acknowledged in King that an ACA offense was an "offense against the United States ...," 824 F.2d at 315-16 (citing United States v. Press Publishing Co., 219 U.S. 1, 10 (1987)), at least one district court in this circuit has held the legislative history of the amendment reflects a Congressional intent to "specifically overturn[ ]" the like-punishment rationale of King. See United States v. Heard, 700 F.Supp. 12 (D.S.C.1988)